MARY MORAN ET AL., APPELLEES, v. WILLIAM CATLETT ET AL., APPELLANTS.

FILED DECEMBER 15, 1917. No. 19017.

1. Process: CONSTRUCTIVE SERVICE: AFFIDAVIT. "An affidavit for constructive service upon unknown heirs, under section 83 of the Code, must be made by the plaintiff himself, if an individual, and not by his attorney, and must be verified positively." *Moran v. Catlett*, 93 Neb. 158.

2. Foreclosure of Tax Lien: JURISDICTION: RECITAL IN DECREE. A recital in the decree rendered in an action to foreclose a tax lien

brought against a nonresident, that the court finds due and legal notice of the filing and pendency of the action was given to the defendants, will not supply the lack of facts necessary to confer jurisdiction. *Duval v. Johnson*, 90 Neb. 503; *McKenna v. Pleasant*, 96 Neb. 581.

3. Evidence: PRESUMPTION: JUDICIAL PROCEEDINGS. An alleged presumption in favor of the regularity of the proceedings of the court cannot be made to contradict the record itself.

4. Appeal: LAW OF THE CASE. A decision of this court on a former appeal of a question presented by the record becomes the law of the case, and such question will not ordinarily be re-examined on a subsequent appeal. *Mead v. Tzschuck*, 57 Neb. 615.

APPEAL from the district court for Perkins county: ERNEST B. PERRY, JUDGE. *Affirmed.*

*Hainer & Craft, A. W. Lane* and *James I. Rhea*, for appellants.

*Wilcox & Halligan* and *R. H. Beatty, contra.*

HAMER, J.

This case is here for the second time. *Moran v. Catlett*, 93 Neb. 158. It comes on appeal from the judgment of the district court in favor of the plaintiffs. It involves title to the southeast quarter of section 13, township 10 north, range 39 west of the sixth P. M., in Perkins county, Nebraska. The action is brought by the plaintiffs to set aside certain conveyances founded upon alleged tax sale certificate foreclosure proceedings, and to be allowed to pay the taxes against said land and to redeem it. At the first trial a demurrer to the plaintiffs' petition was sustained and the cause dismissed. The plaintiffs appealed, and this court reversed the judgment of the district court. The judgment was rendered on a demurrer to the petition. We held the petition good. Whether our former judgment should be adhered to is one of the questions which we are called upon to determine.

On July 15, 1891, Patrick Fitzgerald died intestate and the owner of an executory contract to purchase from the Union Pacific Railroad Company the land in

controversy.  He left surviving him his widow, Mary
Fitzgerald, now Mary Moran, and one son, Patrick
Thomas Fitzgerald, who was born on the 17th day of
August, 1891, a month and two days after his death.
The widow of Patrick Fitzgerald completed the pay-
ment of the purchase price of the land, and on the 24th
day of January, 1894, the Union Pacific Railroad Com-
pany conveyed said land by deed to "the heirs at law
of Patrick Fitzgerald, deceased." The deed was re-
corded in the office of the county clerk of Perkins
county, August 10, 1894.

The 1894 taxes on said land and the subsequent taxes
remained unpaid, and on March 12, 1896, the land was
sold at a private sale to John W. Welpton. On Septem-
ber 19, 1900, said Welpton filed his petition to fore-
close his alleged tax lien, naming as defendants: "Mrs.
Patrick Fitzgerald, full name to plaintiff unknown, the
heirs of Patrick Fitzgerald, further and full names to
plaintiff unknown, defendants."

One of the issues in the instant case is whether the
plaintiff in the tax foreclosure case, John W. Welpton,
signed an affidavit to procure service by publication
on the defendants in the tax foreclosure case. It ap-
pears to be conceded that such an affidavit was neces-
sary and jurisdictional, and that without making and
filing the same in the tax foreclosure proceedings the
judgment of the district court in the instant case
should be in any event affirmed. A careful examina-
tion of the files discloses no such affidavit. We will
examine the petition and each affidavit filed in the tax
foreclosure proceedings for the purpose of finding
whether Welpton himself signed either of them. We
will also examine the evidence concerning whether an
affidavit to obtain service by publication was ever filed
in the case by John W. Welpton. The petition in the
tax foreclosure case is signed John W. Welpton by
his attorney, and the verification to this petition is
signed and sworn to by his attorney September 12, 1900,

before "J. B. Sherman, Clerk of Dist. Court." The petition is shown by the filing mark to have been filed September 19, 1900. On the 19th day of September, 1900, an affidavit was filed in said case entitled "John W. Welpton, plaintiff, v. Mrs. Fitzgerald, and the heirs of Patrick Fitzgerald." The affidavit is sworn to by the attorney for the plaintiff before "J. B. Sherman, Clerk of Dist. Court," September 19, 1900. This affidavit recites that on the 19th day of September, 1900, plaintiff filed his petition to foreclose "a tax sale certificate upon the S. E. ¼, sec. 13, twp. 10 north, range 39 west, which said real estate is in the name of the heirs of Patrick Fitzgerald, deceased, as appears from the numerical indexes in the office of the county clerk of Perkins county, Nebraska; that said premises were conveyed to said heirs by the Union Pacific Railroad Company; that affiant has written said company and been informed by it that said heirs were in Chicago, Illinois; that affiant has been unable to learn the names or address of any of the said heirs and plaintiff has been unable to do so, and their names and address are to plaintiff wholly unknown and he is unable to ascertain the same. Wherefore, affiant and plaintiff prays that service may be made upon said heirs as unknown and without naming them." The above affidavit is not called by any name and is written with a pen.

On the 19th day of September, 1900, there was filed in the office of the clerk of the district court for Perkins county an affidavit, entitled as follows: "John W. Welpton, Plaintiff, v. Mrs. Fitzgerald, wife of Patrick Fitzgerald, other and full name to plaintiff unknown, the unknown heirs of Patrick Fitzgerald, deceased, Defendants." It is called "Affidavit for Service." It is sworn to by the attorney for the plaintiff, and signed by such attorney and sworn to by him before "J. B. Sherman, Clerk of Dist. Court," Sept. 19, 1900. This affidavit recites that the attorney for the plaintiff, naming such attorney, deposes and says that he is the duly authoriz-

ed attorney for the plaintiff herein; "that on the 19th day of September, 1900, the plaintiff herein filed his petition in the district court of Perkins county, Nebraska, against the said defendants, Mrs. Fitzgerald, widow of Patrick Fitzgerald, other and full name to plaintiff unknown, the unknown heirs of Patrick Fitzgerald, deceased, the object and prayer of which are to foreclose a certain tax sale certificate issued by S. Wall, treasurer of Perkins county, Nebraska, on the 12th day of March, 1896, at private tax sale for taxes assessed against the southeast quarter, sec. 13, twp. 10, Range 39 west, in Perkins county, Nebraska; that the plaintiff has paid as subsequent taxes, duly and legally assessed against said premises, the following sums, to wit:" The plaintiff claims payment of taxes levied for 1895 to 1899, inclusive. It is then said that there "will be due the plaintiff thereon, the 12th day of November, 1900, the sum of $105.94. Plaintiff prays for a decree that the defendants be required to pay the same, and that said sum be decreed the first lien upon said premises, and that 10 per cent. thereof be taxed as attorneys' fees and made a part of the decree.   *   *   *   That service of summons cannot be made upon the said defendants or any of them within this state. Wherefore, plaintiff prays service upon said defendants by publication." The filing mark shows it was filed September 19, 1900. On the 12th day of November, 1900, according to the filing mark on the back of the original paper, the plaintiff in the tax foreclosure suit filed a paper in the office of the clerk of the district court, entitled: "John W. Welpton, Plaintiff v. Mrs. Fitzgerald, widow of Patrick Fitzgerald, full name to plaintiff unknown, and the unknown heirs of Patrick Fitzgerald, Defendants." This paper is signed "John W. Welpton, Plaintiff," by his attorney, giving the name of the attorney. It is verified by such attorney, and appears to have been sworn to by such attorney, naming him, before "J. B. Sherman, Clerk of District Court," on the 12th day of November,

1900. The body of the foregoing paper reads: "Comes now the plaintiff and alleges that he is the holder and owner of a tax sale certificate set forth in plaintiff's petition; that the property involved in this cause appears by the records to be owned by the heirs of Patrick Fitzgerald, having been deeded to said heirs by the Union Pacific Railroad Company; that plaintiff has made all possible inquiry to discover the address of said heirs and has been unable to find the same; that plaintiff is informed by the Union Pacific Railroad Company that deed' was forwarded to the said heirs at Chicago, Illinois, but plaintiff has been unable to discover the names of said heirs or their address. Wherefore, plaintiff prays that said heirs may be served by publication as the unknown heirs of Patrick Fitzgerald, deceased." There is a verification to the above paper, which avoids calling it by any name, and which recites on information and belief that the person making it, calling him by name, "is the duly authorized attorney for the plaintiff in the above-entitled action; that the matters and facts herein set forth are true as he verily believes."

The certified copy of the appearance docket in the tax foreclosure case shows the filing of the petition September 19, 1900, and on the same day the filing of two affidavits, one designated as "Affidavit for Service," and one simply as "Affidavit;" also, that on November 12, 1900, an "Affidavit" was filed. This corroborates the proof offered in the shape of the original files and the oral testimony for the plaintiff. While the appearance docket entries do not show by whom the affidavits mentioned were made, the files show "Affidavit for Service" filed September 19, 1900, and another "Affidavit" filed on September 19, 1900, and thereafter the filing of an "Affidavit" November 12, 1900. There is an agreement as to the number of affidavits filed, the time of filing them, and where one of the affidavits is named "Affidavit for Service" the appearance docket

designates it in the same way.  No other affidavit is shown to have been filed which might correspond to an affidavit made by the plaintiff himself.  The complete record agrees with the appearance docket and with the original files.

The affidavit written with a pen, and which in its position in the files in the bill of exceptions here is next to the petition and immediately on top of it, recites that it was written on the 19th day of September, 1900, and is sworn to on that date and filed on the same day. It is naturally suggested to the mind that this affidavit written with a pen, and which was filed at the same time as the petition, was filed for the purpose of obtaining jurisdiction.  The first affidavit must have been deemed insufficient, or a second affidavit would not have been filed.  The "Affidavit for Service," which is in typewriting, and the next affidavit thereafter in the files, being next to the affidavit written with a pen and immediately above it, appears to have been sworn to on the 19th day of September, 1900, and the filing mark on it is on that day.  The affidavit written with a pen and also the affidavit in typewriting immediately next thereto are both sworn to by counsel for the plaintiff in the tax foreclosure case and appear to have been filed on the 19th day of September, 1900.  It may be asked what was the purpose of filing the third "Affidavit," the paper of the date of November 12, 1900. The two prior affidavits being the affidavits filed September 19, 1900, must have been deemed insufficient by counsel, or the paper referred to as the third "Affidavit" would not have been prepared and filed.  And it is such a peculiar affidavit.  The affiant himself, being the attorney of the plaintiff in that tax foreclosure case, states "that plaintiff is informed by the Union Pacific Railroad Company" that the deed had been forwarded "to said heirs at Chicago, Illinois." The attorney does not in this "Affidavit" allege what he himself is informed or knows, but he alleges the

plaintiff "is informed." Then he says that "plaintiff has been unable to discover the names of said heirs," etc. If counsel for plaintiff in the tax foreclosure case filed his own affidavits, three of them, besides the petition, and at the time himself thought they were sufficient to enable the court to acquire jurisdiction, was there any reason why he should have thought it necessary then to file the affidavit of the said plaintiff? In any event, this paper must have been intended by plaintiff's attorney to perform some service. It was a statement made under oath because verified by the attorney. It was made on behalf of the plaintiff in that case. It could not be a petition, because a petition had already been filed. It was probably filed just before the making of the order of November 12, 1900, directing that service be made by publication for four consecutive weeks. In the mind of the attorney it must have been intended to perform some function, or he would not have prepared, and filed it.

The journal entry of the order of November 12, 1900, directing that service be made by publication for four consecutive weeks, recites: "And it appearing to the court from the affidavit of the plaintiff annexed to his petition;" but we do not find any affidavit annexed to the petition, or any evidence that an affidavit was ever attached to the petition. The affidavit above referred to which was written with a pen and the affidavit called "Affidavit for Service" appear to have been both signed and sworn to by counsel for the plaintiff in the tax case and were filed on the 19th day of September, 1900, and they follow one above another beginning on top of the petition, the petition being on the bottom of the files as they are fastened together in the bill of exceptions, and the affidavit written with a pen is next to and immediately on top of the petition, and the type-written affidavit of the same date, the one called "Affidavit for Service," being placed immediately on top of the affidavit written with a pen. It would seem to be

Moran v. Catlett.

a natural conclusion that the two affidavits first named and first filed were prepared and filed at the same time that the petition in the tax foreclosure case was filed. The peculiar "Affidavit" was sworn to November 12, 1900, and was filed on that day, as shown by the filing mark on the back of the same. If counsel for the plaintiff thought it was necessary to make and file three affidavits of his own, he probably did not think it necessary to file one signed and sworn to by his client. His three affidavits were made to acquire jurisdiction. Presumably he did not think that he needed more. The attempt of defendants to show that an affidavit might have been made by the plaintiff in the tax foreclosure case and might have been abstracted is not of a satisfactory character and is not supported by any testimony. No one testifies that the plaintiff in the tax foreclosure proceeding filed any affidavit. If Welpton had signed an affidavit, the opinion of this court in the first case heard, *Moran v. Catlett, supra,* would probably have disclosed that fact, and attention would have been called to it in that case.

The attorney for Welpton testified in the instant case. He would not himself testify that Welpton made an affidavit. "Q. You may state whether or not any affidavit was filed with the petition in said case made by John W. Welpton to the effect that the names and residences of the heirs of Patrick Fitzgerald, deceased, were unknown to him." He answered: "I am unable to state in that matter. I cannot recall in my own memory the facts with reference to it."

The deposition of J. B. Sherman, formerly county clerk and clerk of the district court for Perkins county, Nebraska, was introduced in evidence. At the time it was taken he resided at Eugene, Lane county, Oregon. He testified that he remembered that Mr. Welpton brought some tax foreclosure suits while he was clerk. He did not appear to know whether the Welpton affidavit had been filed or not. He said: "I cannot say

that I have any distinct recollection of the filing of any particular paper in said case, but it runs in my mind that Welpton's affidavit was filed, and that this was one of the missing papers referred to in the memorandum made by my sister. I must say that my memory is weak as to this.'' His testimony was given 13 years after he ceased to be the clerk. If it appeared to be weak to himself, then it cannot be strong to us. This testimony might be due to the force of suggestion contained in the letter which counsel for the defendants in the instant case wrote to the witness and which appears in the evidence. There is the statement in the letter that the affidavit and a tax receipt are missing, and that his sister had testified in the case and had said that she must have made the memorandum ''files missing.'' He is told in the letter that if he ''can remember that there were two papers missing and that the Welpton affidavit was one of them'' then his testimony will be of value. The letter states that Judge Grimes made an order on Nov. 12, 1900, directing that the heirs of Patrick Fitzgerald be served with notice by publication, and that the order recited that Welpton's affidavit was on file and annexed to the petition, yet ''the law is such that we must furnish all the evidence that we can that it was actually made and filed.'' There is much in the letter calculated to stimulate the failing memory of the witness and suggesting that he may testify to certain things mentioned. Every trial judge of wide experience and every trial lawyer knows that the testimony of the witness is often colored at the suggestion of counsel.

Maggie Sexon testified that she had been deputy clerk during the years 1900 and 1901; that some one took the files out of the office during that time whose name she does not remember; that when the files were returned some of them were missing, but just how many or what was missing she could not say; and that she made a memorandum ''files missing'' and put it

with the papers in the case. Her testimony was taken at least 13 years after she left the office, and all that is true touching the weakness of her brother's testimony applies to her testimony.

It is proper also to consider that at the commencement of the tax foreclosure case there would likely not have been any one on the side of the defense in that case who would know that Welpton had filed an affidavit. The mother of the infant heir' had gone to Chicago, where the child was with' her. It might be natural for some one then connected with the foreclosure of the tax case to try to fix up a good title. No one undertakes to say who broke open the eyelets or who took out any paper, if a paper was taken out. The motive to break the eyelets and create deceptive appearances might exist on either side, but the plaintiffs in the tax foreclosure case who were then on the ground would be likely to have a knowledge concerning the record not possessed by the others, and this might stimulate them to action.

The order procured would seem to have been made on the affidavits of Welpton's lawyer. If so, was there any reason why Welpton's affidavit should have been made and filed?

The decree of foreclosure in the tax case appears to have been made March 19, 1901. It orders that in case the defendants fail for the period of 20 days from the date of this decree to pay into court the said sum of $108.94, and the further sum of $10.89 attorney's fee, and also the costs of this action, that then and in that case the said premises shall be sold by the sheriff of Perkins county, Nebraska, as upon execution to the highest bidder to satisfy the amount so found due.

There is no other affidavit filed in said case except the affidavit showing publication in the Elsie Leader. The complete record confirms the examination made of the files. Plaintiffs claim that the amended petition

was adjudicated by *Moran v. Catlett* to be sufficient and that the evidence in this case sustains it; that in the said case certain material points were decided by this court that have become a part of the law of the case, the most important being that an affidavit for service upon unknown heirs of a deceased person must be made by the plaintiff in the action, and that said affidavit was not so made. The case being remanded to the district court, the defendants answered said amended petition and a trial was had thereon, and from the judgment rendered for the plaintiff the defendants have appealed.

It is contended by the plaintiffs in the instant case that in the tax foreclosure proceeding the decree, and the deed issued thereunder, and all subsequent transfers are void for the reason that the district court was without jurisdiction in the said case of *Welpton v. Fitzgerald,* because no affidavit was made and filed by the plaintiff himself alleging that the names of the heirs of Patrick Fitzgerald and their residences were unknown to said plaintiff in the tax foreclosure proceeding. Defendants contend mainly that Welpton did execute and file such an affidavit.

If what was decided in *Moran v. Catlett,* 93 Neb. 158, has become the law of the case and is decisive, then we need go no further. We held in that case: "An affidavit for constructive service upon unknown heirs, under section 83 of the Code, must be made by the plaintiff himself, if an individual, and not by his attorney, and must be verified positively." In *Mead v. Tzschuck,* 57 Neb. 615, it was held: "A decision of this court on a former appeal of a question presented by the record is therefore the law of the case." It was also held: "When the evidence is substantially the same as on a former appeal, the weight and effect to be given such evidence must be considered as foreclosed by the former decision on that point." In the opinion it is said: "The determination of a question

presented in reviewing proceedings had in the cause in the district court becomes the law of the case and will not be re-examined." Along the same line we find the following cases which sustain the view taken: *Coburn v. Watson*, 48 Neb. 257; *Fuller v. Cunningham*, 48 Neb. 857; *Wittenberg v. Mollyneaux*, 59 Neb. 203; *Richardson Drug Co. v. Teasdall*, 59 Neb. 150; *Hall v. Baker Furniture Co.*, 86 Neb. 389; *Anheuser-Busch Brewing Ass'n v. Hier*, 61 Neb 582; *Hoosier Mfg. Co. v. Swenson*, 87 Neb. 182; *Piper v. Neylon*, 93 Neb. 51; *Cronin v. Cronin*, 94 Neb. 353.

It is contended by the plaintiffs that where a judgment recites that there was due service on defendant, but where the complete record fails to show a jurisdictional service, the record controls over the recitation in the judgment. The position is sustained in *McKenna v. Pleasant*, 96 Neb. 581; *Vandervort v. Finnell*, 96 Neb. 515; *Duval v. Johnson*, 90 Neb. 503. We think the principle established by our former decisions touching this point should be adhered to.

Out attention is called to *Suiter v. Turner*, 10 Ia. 517, where it is held: "Every presumption obtains in favor of the regularity of proceedings in a court of general jurisdiction; and a recital in a decree in a foreclosure proceeding showing the service of notice by publication is sufficient to sustain jurisdiction." To this it may be answered that the record shows that there was no foundation laid by the filing of a proper affidavit, and this destroys any presumption that might obtain in the direction of regularity in the proceedings.

There is not only a total failure of proof that Welpton made the affidavit, but all the circumstances surrounding the transaction point to the conclusion that no affidavit was made. It is sought to show that this affidavit by the plaintiff must have been taken out of the files, because it is possible that if an affidavit had been there it might have been taken out. It would first have to be there.

In *Joost v. Craig,* 131 Cal. 504, an action was brought against a notary public upon the ground that he had falsely certified that one Charles A. Anderson of Redwood City had acknowledged the deed. The deed appears to have been forged by one Keon. Keon wrote the name Charles A. Anderson. The notary who took the acknowledgment knew that Keon furnished the deed to Fisher and received the money. In the opinion it was said: "This was a fact peculiarly within the knowledge of the defendant notary, and which, in the nature of things, it would be difficult for plaintiff to prove. Under such circumstances slight evidence is sufficient to shift the burden of proof." Because of the foregoing slight proof, it was held that the burden was cast upon the defendant in that case.

In the instant case, counsel for the plaintiff in the tax foreclosure case testified on behalf of the defendants. He is shown to have prepared the papers that were filed in that case, and the knowledge that the plaintiff had filed the affidavit required therein was peculiarly his, if such fact had actually existed. He declined to testify to it. The burden of proof is put upon the plaintiff in the tax foreclosure case, because the knowledge was peculiarly within the range of the duties of his counsel, and he offered his counsel as a witness on his own behalf. He refused to testify to the necessary fact, and therefore the defendants failed to maintain their contention.

All the material questions in the instant case seem to have been heard and determined in favor of the plaintiff and appellee and against the defendants and appellants in the case of *Moran v. Catlett, supra,* The finding of facts made by the district court at the trial of this case fully sustains the allegations contained in the amended petition held to be sufficient on the former hearing in this court.

The land of no man or woman should be taken from its owner for failure to pay the taxes due upon it with-

Moran v. Catlett.

out a strict compliance with the law. As the taxes be-come a lien upon the land, which they do under the statute, they must sooner or later be paid. Fitzgerald was born very soon after the father died. The mother went to Chicago and took the infant with her. Should anything be held against this infant because he failed to pay the taxes against the land?

It is contended by appellants that the amount of the tax lien on the land was fully equal to the value of the land itself at the time of the sale, and that the plaintiffs made no effort to redeem until the commencement of this lawsuit, at which time the land had increased in value. Whether it will be profitable to the plaintiffs to redeem the land from tax liens is not before us. We pass only upon their right to redeem.

The grantee of the purchaser at the tax sale took his deed based upon the tax foreclosure decree with that knowledge of the infirmity in the proceeding which the law presumes. He could not be an "innocent pur-chaser" in the sense that term is used in the law. We have not been shown a sufficient reason for reversing the judgment of the district court. It appears to be right, and it is

AFFIRMED.

ROSE, J. I concur in the affirmance.

SEDGWICK, J., dissenting.

The majority opinion makes this case depend upon one supposed defect in the record. An affidavit for publication of summons was made by the plaintiff's attorney—yes, two or three of them were made by the plaintiff's attorney. They stated the facts that would justify such service, and there is no question now but that the facts existed at that time as stated in those affidavits. The statutory ground for service by publi-cation is shown beyond question to have existed at the time, and the question decided is whether the plaintiff also made an affidavit himself in the case. If he did,

the sale is regular in all respects. If he did not, we have the technical point that the facts that everybody now knows existed were established by the attorney's affidavit and not by that of the plaintiff himself. The case was before this court and was decided upon a demurrer to the petition, 93 Neb. 158. The petition was held to state a cause of action. This was because the petition showed that the affidavit for publication was defective. There is now no doubt but that several defective affidavits were filed. When the case went back it was alleged that there was a proper affidavit filed which had been lost from the files, and that appears to be the only question determined. It was not presented at the former hearing. The judgment of the trial court recites that there was an affidavit of the plaintiff filed and finds it sufficient and renders a judgment accordingly. When such a record is attacked, the burden is not upon the defendant to show that the judgment is regular, or that the court had jurisdiction, but the burden is upon the plaintiff who attacks the record to show clearly that there was a want of jurisdiction. And when this foreclosure title has stood for 10 or 15 years and the land has been bought and sold by innocent parties relying upon this title, the burden of showing that the court was without jurisdiction upon some technical matter is rightly placed by the law upon the party who attempts to set aside the judgment of the court and he must make a clear and complete proof. The majority opinion is entirely predicated upon the alleged weakness of the evidence tending to prove that the affidavit of Welpton, the plaintiff in that case, was in fact before the court when the court so found. The evidence of several witnesses is quoted, including the evidence of the deputy clerk who kept the record—that some one took the files out of the office during that time whose name she did not remember, and that when the files were returned some of them were missing, but just how many or what was missing she could not say, and

Moran v. Catlett.

that she made a memorandum "files missing," and put it with the papers in the case. And some of the evidence of the clerk is quoted as follows: "I cannot say that I have any distinct recollection of the filing of any particular paper in said case, but it runs in my mind that Welpton's affidavit was filed, and that this was one of the missing papers referred to in the memorandum made by my sister. I must say that my memory is weak as to this." Similar evidence of other witnesses is quoted. In connection with the evidence of each, a suggestion like the following is made in the opinion: "His testimony was given 13 years after he ceased to be the clerk. If it appeared to be weak to himself, then it cannot be strong to us." So it is assumed through the whole opinion that, when a plaintiff attacks the finding and judgment of a court of general jurisdiction 10 or 15 years after it is entered, the burden is upon the defendant to prove that the finding and judgment assailed are true and valid. Not only is the burden placed upon the wrong party, but it is assumed that his evidence must be clear and positive and directly to the point considered. It seems to me that this cannot be the law. There is so much evidence that some of the papers were taken from the files before the time arrived for making a complete record under the statute (Rev. St. 1913, sec. 8013), and that the affidavit of the plaintiff himself was before the court when the finding to that effect was made, that, even if it devolved upon the defendant to make such proof when the findings and judgment were attacked by the plaintiff, this decision is wrong, especially when it is remembered that the plaintiff has offered no evidence in support of the allegations of his petition, except that the files have not been preserved complete for more than a dozen years, and that the complete record does not contain the affidavit in question. It is admitted that the fact existed that the affidavit of the plaintiff should have shown, and that the court found that the plaintiff's affidavit was upon file at the time of

the decision; and one who alleges that that is not true has no presumptions in his favor, but all presumptions are against him.  The second paragraph of the syllabus might be considered as indicating that the court intends to hold that the burden of proof is upon the party who seeks to uphold the judgment of the court.  Two decisions of this court are there cited as supporting the proposition of this paragraph of the syllabus.  One of them, *Duval v. Johnson,* 90 Neb. 503, stated that "A recital in the judgment that 'the court finds that due and legal notice of the filing and pendency of this action was given the defendants' will not supply the lack of the facts necessary to confer jurisdiction," but does not in that connection state how "the lack of facts" should be made to appear.  The case is not at all an authority for the proposition that the burden of proof is upon the party who seeks to uphold the judgment. The finding of the trial court that notice of the "pendency of this action was given the defendants" is not strictly a finding of fact alone, but is also a conclusion of law, and it is not a finding that any specific fact exists.  It appears from the opinion in that case that there was no record that any notice whatever was published and that there was affirmative evidence that no such notice was published and no evidence whatever that it was.  The case does not determine that the burden of proof was upon the party attempting to support the judgment.  It simply determines that when there is no record furnishing any such proof, and there is proof to the contrary, the jurisdiction of the court is not sustained by the record.  The opinion in the case cited says that this court has held that "the record must affirmatively show that the statute has been complied with," and that "this doctrine has been severely criticised by text-writers.  *  *  *  The weight of authority in other states seems to support a contrary view."  Clearly this language that the record must affirmatively show that the statute has been complied with is not intended

Moran v. Catlett.

in that decision as it is applied here in this case. In the case at bar the court specifically found that the affidavit of the plaintiff was filed, and this court has frequently held that the files of the newspaper in which the notice was published and other extrinsic evidence may be introduced to show that the notice was in fact published. The case is authority for the proposition that the party who attacks the judgment has the burden of showing that the court that rendered it was without jurisdiction. This burden he may sustain by introducing the record which fails to recite that any notice was actually published, or fails to recite some other jurisdictional fact, and this condition of the record *with affirmative oral testimony* tending to prove that no such notice was published may be sufficient to sustain that burden and defeat the judgment. In *McKenna v. Pleasant*, 96 Neb. 581, the other case cited in support of the second paragraph of the syllabus of the majority opinion, the rule is stated to be: "When the complete record of a forclosure of a real estate mortgage fails to show that an affidavit for publication of the summons was filed in the case, and no such affidavit appears in the files, it must be found that no such affidavit was filed, in the absence of any affirmative proof of that fact." That is, if there is no record that any such affidavit was filed and no "affirmative proof," this would be sufficient *prima facie* proof that no affidavit was filed. But when, as it appears in the case at bar, the absence of such affidavit from the complete record is explained and accounted for, and there is other evidence tending to show that such an affidavit was in fact filed, and there is an express finding of the court to that effect, clearly the attack upon the judgment has not been sustained. If we say that after many years the fact that the affidavit is not still in the files is so conclusive that the findings and judgment are wrong, we will, I think, render invalid a majority of the foreclosure titles in the western half of the state, if not a

larger proportion of them—a most unfortunate thing to do. It is suggested that when lands are sold for taxes there ought to be a liberal right of redemption. But there is also another side to be considered. If titles under foreclosure sales for taxes are rendered absolutely uncertain, the payment of real estate taxes cannot be enforced. Such titles are very common throughout Nebraska, and especially in the western part of the state. Twenty-odd years ago, when these taxes in this case became due, it was quite a common idea that the lands were not worth paying taxes upon, and so they became transferred to those that were willing to pay the taxes through foreclosure sales. One who buys land at a foreclosure sale takes his chances whether the value of the land goes up or down. If the value goes down or remains stationary, there is seldom any effort made to set aside the sale or to redeem the land. But if the land advances rapidly in value, then there will always be found some one to contest the proceedings if there is any possible hope of success in doing so. I suppose it very rarely happened that the clerk of the court was a lawyer or knew how to make up a record, and the judges themselves were not as particular to see that the clerk made up the record technically correct in all respects as perhaps the judges are now. I suppose that, among all of the foreclosures by tax sales in Nebraska, not more than one in ten can be found to stand the test of this decision.

DEAN, J., concurs in this dissent.