[Civ. No. 18716.    Second Dist., Div. One.    May 26, 1952.]

THORNBURGH CONSTRUCTION COMPANY (a Corporation), Respondent, v. COLLEGE HEIGHTS DEVELOPMENT (an Association) et al., Defendants; SAM RAIS, Appellant.

John W. Preston and John W. Preston, Jr., for Appellant.

Aaron Levinson and Albert E. Marks for Respondent.

HANSON, J. pro tem.—This case instituted by a corporation against two of its three directors (Thornburg and Rais) is most unusual in that it was promoted at the instance, and by the vote of Thornburg and that of the third director who not only did not own any stock in the corporation but was Thornburg's personal bookkeeper. In short, Thornburg owned 70 per cent and Rais 30 per cent of the outstanding capital stock. The action as instituted was *at law* to recover corporate funds in the sum of $100,975.92, which Thornburg had deposited in his personal bank account, but which he claimed had been expended by him, without any corporate action but, nevertheless, with the consent of Rais, to a joint venture in which he and Rais were engaged in equal ownership. The trial judge rendered judgment in favor of the corporation for the full amount it claimed and thereafter execution issued and was levied upon the joint venture property. Upon the execution sale the corporation bid in the property for approximately $26,489.67 less than its judgment and is now the owner of the joint venture property. It is at once apparent that through the technical legal procedure taken by Thornburg he has decreased the interest of Rais therein from 50 per cent to 30 per cent. Rais alone appeals from the judgment individually and in behalf of the alleged joint ventures.

It should here be added that the case before us is one of three separate cases all based largely upon the same set of facts. While all the cases were consolidated for trial, nevertheless separate findings, conclusions and judgments were entered in each. Accordingly, separate opinions are being filed in each of the cases.

In this particular case we are presented with three questions. The *first* is whether the corporation (whose capital stock was wholly owned by respondent Thornburg and appellant Rais) is to be classed as the *alter ego* of its two stockholders *after* the corporation had served the purpose for which it was formed.

The *second* question is whether the distribution by Thornburg of $100,975.92 from his personal bank account is, in

whole or in part, to be classed as a loan or as a liquidating dividend by the corporation to Thornburg and Rais either jointly or severally .

The *third* question is whether any one or more of the four items, comprising the amount of the judgment of $100,975.92, i. e., one of $36,909.90; another of $5,725.29; another of $2,870; and still another for $55,470.73 were, *in any event*, recoverable by the corporation from the appellant Rais.

Early in 1946 the defendant Rais, along with two associates, purchased a 35-acre tract near Compton which they at once graded and subdivided into 178 residential lots with the view of constructing residences on only 162 of the 178 lots. Thereafter in November, 1946, these three individuals, each owning an undivided one third of the acreage entered into a contract with respondent Thornburg, a licensed contractor and builder (hereinafter referred to as the "contractor"), wherein the latter agreed to build 162 homes on the 162 lots at *cost* plus 40 per cent of the net profit obtained by the corporation upon sale. As it appeared to be more advantageous for appellant Rais and his two associates to operate as a corporate entity rather than as individuals they caused a corporation to be formed under the name of the "Thornburg*h* Construction Co." (hereinafter referred to as the "corporation") with authority to issue and sell preferred and common stock at one dollar per share. Shortly after this corporation was formed it was granted a permit to issue 30,000 shares of preferred stock to each of the three incorporators in consideration of their conveyance of the 162 lots to the corporation. In addition the corporation was authorized to sell 100 shares of its common stock at one dollar per share as follows: 40 shares to Thornburg, 20 shares to the appellant along with 20 shares to each of his two associates. The issuance of 40 shares of the common stock to Thornburg was intended to, and in fact superseded the provision in Thornburg's contract whereby he was to be paid, as his profit, 40 per cent of the corporate profits upon a sale. Out of profits which shortly accrued, the corporation retired the outstanding preferred stock by a payment to the holders of $90,000 and interest. By reason of common stock purchases thereafter made by Thornburg and the defendant Rais from the original associates of Rais, Thornburg became vested with 70 per cent of the outstanding common stock and Rais with 30 per cent thereof. Likewise through purchases made from the associates of Rais by Thornburg and by Rais, they each became vested

with an undivided one-half interest in the 16 lots which had not been and never were conveyed to the corporation.

Shortly after its formation in November, 1946, the corporation made arrangements with a mortgage company to borrow upon its notes a sum between $7,700 and $8,100 against each lot, secured by an individual trust deed thereon. Evidently as soon as a house was constructed on a lot the mortgagee issued its check to the corporation for the amount due it. Some of the checks were endorsed over to the contractor and where this was not done the corporation promptly issued its own check for an amount equal to the amount it received. As a result of the mortgage arrangement the corporation as early as January, 1948, not only had built a house on each of the 162 lots and received mortgage moneys on said lots totaling the sum of $1,131,800, but had sold the lots with the houses thereon, subject to the trust deed of record. By reason of these consummated sales the books of the corporation showed a net profit of $130,096.39. This entire amount was turned over to Thornburg and deposited in his personal bank account, with a duty on his part to account therefor to the corporation. Evidently in addition to this sum Thornburg had in his account the further sum of $509.92 belonging to the corporation which with the sum of $130,096.39 totaled $130,606.31. Out of this sum he paid in behalf of the corporation federal income taxes for the fiscal year 1947 and state franchise taxes for the fiscal years 1947 and 1948 in a total of $9,630.39 leaving $120,975.92 in his hands. As the corporation had credited on its books to Rais $10,000 and to Thornburg $10,000 as salaries and charged the amount to expense this total of $20,000 could properly have been paid by Thornburg out of the $120,975.92 in his hands had there been, and perhaps without, corporate action to that effect. This would have left $100,975.92 in his hands (of which $100,466 represented net profit) for which identical sum he and Rais were sued by the corporation. As by January, 1948, the corporation had sold all the 162 lots, subject to the mortgage of record against each, it evidently had fulfilled the purpose for which it was created. Aside from any contingent liabilities, such for instance as federal income taxes, it apparently had no reason for continuing its corporate existence and could have been liquidated. If it had then been liquidated Thornburg would have been entitled to 70 per cent of the $100,975.92 or $70,683.14, and the defendant Rais to 30 per cent of the $100,975.92 or $30,292.78. Be that as it may Thornburg pro-

posed to Rais that the two should build multiple dwellings, to be constructed by Thornburg, on each of 14 out of the 16 lots in which they were equal owners; that each of the lots should be mortgaged for $13,000; that to the extent the cost of any multiple dwelling exceeded $13,000, the excess should be paid out of the profits which had accrued to the corporation then in the bank account of Thornburg. To this defendant Rais agreed. As a consequence 14 multiple dwellings were built on 14 of the 16 lots, each of which was mortgaged for $13,000. The checks of the mortgagee to evidence these loans made payable to Thornburg and Rais (and their wives) were endorsed by the payees and handed to Thornburg who deposited them in his own personal bank account. The total mortgage money thus received by Thornburg from the mortgages placed on the 14 lots aggregated $182,000. As these mortgage moneys were insufficient to pay the cost of the 14 multiple dwellings Thornburg claims he expended directly out of the corporation's funds resting in his own personal bank account the sum of $55,470.73. In addition to this sum he claims he also expended, in effect, $45,505.19 more of the corporation's money even though he retained it personally on the theory it was due him from the joint venture. The latter amount consisted of the following: (1) Thornburg's 1948 overhead expense $2,870; (2) apportionment of general overhead expense (evidently claimed as above) $5,725.29; 15 per cent of the cost of constructing the 14 joint venture units $36,-909.90, the latter being claimed under an alleged oral agreement with Rais. The 14 multiple dwellings were completed on April 29, 1948. But none of the charges aggregating $45,-505.19 were ever entered in Thornburg's books of account except items $2,870 and $5,725.29. These items appear in sequence on the books, but apparently were not entered until after the multiple dwellings had been completed.

The action instituted by the plaintiff corporation was strictly one *at law* to recover from the defendants Rais and Thornburg the sum of $100,975.92 upon an allegation that the corporation had "advanced" this sum to these two defendants. In what manner or upon what basis the sum was "advanced" was not alleged. However, upon the trial the plaintiff corporation contended that the money had been lent by it to the defendants, whereas the defendant Rais contended it represented a liquidating dividend. The trial court held it was a loan. The difficulty with that finding is that there is no evidence to sustain it. The record shows conclusively that

no corporate action whatever was taken to advance the money to the defendants by way of a loan, a liquidating dividend or otherwise. In fact the money was not under the control of the plaintiff corporation, but instead rested in the personal bank account of Thornburg. Hence, the money was in his control subject to an implied trust. The moment he used any part of it for other than corporate purposes he was guilty of conversion of trust funds. If Thornburg's personal bank account, despite withdrawals therefrom, still retained an amount equal to what he owed the corporation then it is plain the withdrawals represented his own funds and not the corporate funds belonging to the plaintiff corporation.

As there was no express loan by the corporation to either Thornburg or Rais of its moneys, in the hands of Thornburg, it must recover, if at all on the theory of moneys had and received. We pass then to a consideration of what moneys belonging to the corporation were received by Rais or the joint venture.

The trial court, it appears, accepted the statement of the accountant for Thornburg that the "direct cost" of constructing the 14 multiple dwellings, *including the cost of the land,* was $237,470.73. The accountant did not specify what the land cost. However, it is undisputed that the 178 lots cost the three incorporators $90,000 and hence the 16 lots, on that basis, cost $8,089.60. As no part of the moneys belonging to the corporation, in the hands of Thornburg, were expended in the purchase of the 16 lots it would seem to follow that the $8,089.60 should be subtracted from $237,-470.73 to get the *net* direct cost of constructing the 14 dwellings. Hence, such cost was, at most, $229,381.13. That the trial court was here of the same view as we are is shown by his memorandum of opinion wherein he stated "the *total* cost of the 14 [16?] lots with improvements was $282,975.92" (i.e., the direct cost of $237,470.73 plus the indirect cost claimed and which he allowed of $45,505.19). (Italics supplied.)

In another part of the memorandum of opinion the trial court said: "It is ordered that the original sale price of Lots 1 to 16 in Tract 14124 to Thornburg and Rais before the respective buildings were first started to be constructed on said respective lots should be and is hereby *decreed to be* their market value as of the time of such purchase, and that the interest of Mr. and Mrs. Rais consists of a one-half interest in said lots as they stood at the time and they are so

appraised, and the interest of Mr. and Mrs. Thornburg consists of a half interest as they stood at that time, and they are so appraised.'' (Italics supplied.) But whether the true figure is $229,381.13 or $237,470.73 is of no materiality.

If, however, we assume the direct cost of constructing the 14 dwellings was $229,381.13 we find by deducting the $182,000 in mortgage moneys applied to the cost that the moneys supplied by Thornburg from his bank account aggregated only $47,381.13. However, as the corporation sued to recover only the sum of $100,975.92 and not $120,975.92 it is apparent that it conceded it was not entitled to recover the $20,000 it had credited as salaries to Rais and Thornburg on its books. Hence we think we must assume that Thornburg applied this $20,000 to the ''direct costs of construction'' rather than using the corporation's moneys in lieu thereof. On that assumption only $27,381.13 of the corporation's moneys went into ''direct construction costs.'' The sum of $45,505.19 which Thornburg states he retained out of the moneys due from him to the corporation were not paid over by him to the joint venture. Hence, even if the joint venture owed him that sum we think it did not become liable to the corporation for Thornburg's conversion of its funds to his own use.

But even if we were to assume the contrary it was yet incumbent upon the plaintiff to prove that the sum was due Thornburg from the joint venture. This was not shown. Thornburg's contention that he was entitled to a commission of 15 per cent of the cost of constructing the 14 multiple dwellings rests wholly on his testimony that ''I told Mr. Rais then if we built those buildings I was going to have 15 per cent which would be added on to the cost of the building, and at the end I would be getting 7½ per cent . . Mr. Rais didn't say aye, yes or no . . .'' to the statement. As there was no assent to the proposal, if it may indeed be classed as a proposal, no contract may be inferred. Rais it may be added denied that the conversation took place.

As there must be a reversal we are of the view it is unnecessary to determine whether or not plaintiff did or did not prove the joint venture was indebted to Thornburg as to the two other items included in the sum of $45,505.19, i.e., the item for $2,870 and the one for $5,725.29.

We come next to the question whether the sum of $100,-466 (profit of $130,096.39 less salaries and taxes of $29,-630.39) should or should not be classed as being in effect

a liquidating dividend even thought the corporation took no action declaring any such dividend.

Upon the facts which we have narrated, we think it clearly appears that neither Thornburg nor Rais were of the view that if they found it necessary to use any corporate moneys they would be borrowing it from, or that they would be liable in any respect to, the corporation. As the two men were the only stockholders we think the inference is plain that they entertained the average layman's concept that they were entitled to take the corporate profits without bothering in their capacity *as directors* to formally declare a dividend. No third person was harmed by their action. Moreover, it does not comport with common sense to say that these two men intended to borrow the moneys from the corporation or be classed as borrowers from it. Men are not inclined to borrow $100,000 where they have title to $100,000 available for their use and have no other use for it.

If in the case before us we should not regard the corporation as the *alter ego* of Thornburg and Rais, under the facts of the case, the result is that Rais is unmercifully defrauded as will presently be shown.

Thornburg, as has been pointed out was accountable, at most, to the corporation, and it so contended, for the sum of only $100,975.92 and not $120,975.92 as $20,000 of the moneys in his hands represented salary moneys payable by the corporation to Rais and Thornburg. Hence, out of the $100,975.92 Thornburg could have paid the federal income tax of $38,167.94, and, after doing so, he would still have had in his hands corporate moneys in the sum of $62,807.98 and in addition the salary moneys of $20,000. When Thornburg expended $47,381.13 for the direct construction costs of the joint venture we must assume he first applied the $20,000 in salary moneys in his hands. Had this been done only $27,381.13 of corporate moneys would have been used out of the $56,807.98 ($62,807.98 less $6,000 due Rais in commissions). Of this latter amount 30 per cent would be payable to Rais or $17,042.39 and 70 per cent to Thornburg or $39,765.59. As Rais was obligated to pay into the joint venture the sum of one half of $27,381.13 or $13,690.56 he would have been entitled to $3,351.83 from the corporation and in addition $6,000 from Thornburg or the corporation. In short, had the procedure as outlined been followed Rais would have ended up with no liability to the corporation and with $9,351.83 in cash to his credit. If, in a separate

action, Thornburg could have recovered from him the items $2,870 and $5,725.29 or a total of $8,595.29 he would still have had $9,351.83 to apply to it. The moneys in the personal bank account of Thornburg were not earmarked in whole or in part as trust funds. No part of such funds were paid to Rais or traced to him. Instead they were used by Thornburg to reimburse himself for his own outlays in behalf of himself and Rais.

Upon the facts stated we are firmly of the opinion that the trial court should have found that the corporate moneys (if such they were) advanced to or paid in behalf of Rais were liquidating dividends or in the alternative it should have found that the corporation functioned only as the *alter ego* of the two stockholders and hence should not have entered a judgment against Rais.

The facts we have narrated are clearly within the California rule "that where the recognition of the fiction of separate corporate existence would foster an injustice or further a fraud the courts will refuse to recognize it. (Citing cases.) It is not necessary that the plaintiff prove actual fraud. It is enough if the recognition of the two entities as separate would result in an injustice. (Citing cases.)" (*Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 522-523 [203 P.2d 522].)

For the reasons stated the judgment should be and it is reversed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied June 16, 1952, and respondent's petition for a hearing by the Supreme Court was denied July 24, 1952. Schauer, J., was of the opinion that the petition should be granted.