**SHAMROCK OIL AND GAS CO., a Corporation, Plaintiff,**

v.

**J. E. ETHRIDGE, Individually and as Administrator of the Estate of H. E. Wood, deceased, and J. E. Ethridge and H. E. Wood doing business as Sterling Fishing Tool Co., a Co-partnership, Defendants.**

**Civ. No. 5158.**

United States District Court
D. Colorado.
March 7, 1958.

---

4. Haerr v. United States, 5 Cir., 240 F.2d 533.

William A. Riner, Jr., Cheyenne, Wyo., Holme, Roberts, More, Owen & Keegan and Donald C. McKinlay, Denver, Colo., for plaintiff.

Fred E. Neef, Rendle Myer and Robert Swanson, Denver, Colo., Kreager & Sublett and Ben D. Sublett, Sterling, Colo., for defendant.

ARRAJ, District Judge.

This is an action in replevin and to establish the ownership and right of possession to portions of an oil well drilling rig and certain accessories. The answer contains a general denial and affirmative defenses of estoppel, good faith purchase for value without notice, failure to state a claim upon which relief can be granted, non-compliance with the corporation laws of Wyoming by plaintiff on two different grounds, alter ego, and that there was a joint venture between R. H. Phillips and the plaintiff. Defendants also filed a counter claim seeking damages for the alleged unlawful taking of the property by plaintiff.

Because the doctrine of alter ego is involved in this action, it seems advisable to relate the pertinent facts in considerable detail; these facts are as follows:

Plaintiff, Shamrock Oil and Gas Co., was incorporated in May of 1950, in Wyoming by R. H. Phillips and one Maurer and one Eastman. At the first meeting of the Board of Directors, a qualifying share of stock of the par value of $1 was issued to each of the incorporators; no actual consideration was passed for such shares. At that time Phillips was the owner of the rig in question and, shortly after the incorporation, he leased the rig to the corporation for a rental fee of 50% of the proceeds received for drilling any wells; Phillips was to operate the rig on behalf of the company. It does not appear that the company ever received anything for the operation of the rig. At about the same time, Phillips transferred his interest in some 13 oil and gas leases to the corporation, without consideration; those leases were apparently dropped in December of 1950, through failure to pay delayed rentals. The only evidence of either of the above transactions was the minutes of the meetings of the Board of Directors.

Between May 16, 1950, and September 6, 1950, the corporation maintained a bank account in the Converse County Bank at Douglas, Wyoming; on September 6, 1950, the closing balance of that account was $43.42, which amount was transferred to Phillips' personal account. That is the only bank account the corporation ever maintained.

On August 27, 1951, Phillips gave a bill of sale to the drilling rig and accessories to the corporation in exchange for 90,328 shares of stock. Phillips, doing business as Phillips Drilling Company, continued to operate the rig under a lease from the corporation whereby he was to share the net profits from its operation equally with the corporation. This lease was not in evidence and the corporation minutes alone reflect its terms. Phillips is president of the Shamrock Oil and Gas Co. and has been ever since the first meeting of its Board of Directors.

In the spring of 1954, Phillips was drilling with the rig in Cherry County, Nebraska, and during that time he employed the defendant Ethridge and his former partner, doing business as Sterling Fishing Tool Company, to fish some tools out of a well and to perform other services to recover circulation in the well being drilled by him. Being unable to collect their account, aggregating approximately $9,000, the Fishing Tool Company brought an action in the District Court of Cherry County, Nebraska, to recover its claim. At the same time they caused an attachment to be issued against portions of the drilling rig at the well site.

Upon trial of the case in that Court, the Fishing Tool Company obtained judgment against Phillips for $9,257.68. A sheriff's sale was then held and the defendants in the instant case bought in portions of the rig against their judgment and the judgment was thus satisfied; no appeal was taken from this judgment. The Fishing Tool Company then removed the property to Sterling, Colorado. Shortly thereafter, Phillips, acting for the corporation, obtained possession of the property under a writ of replevin issued in the present case. The property was moved by him from Sterling, Colorado, to Wyoming; and it is now located at Casper, Wyoming. Since obtaining possession of the property it has been used by Phillips in drilling operations for the corporation.

Up to the time of trial there were only 90,331 shares of stock of the Shamrock Oil and Gas Co. outstanding; and at all times subsequent to the sale of the rig, R. H. Phillips was the owner of 90,328 of such shares. Apparently, no written reports were ever made by Phillips to the Board of Directors of the corporation concerning the operations of the drilling rig during the period that he had purportedly leased it from the corporation. The Federal Income Tax Returns filed by Phillips (jointly with his wife) for the years 1951, 1952, 1953, and 1954, reveal that he personally claimed the following as deductions from his gross income: (1) depreciation on the drilling rig, (2) expenses of maintaining and re-

pairing the rig, and (3) promotional expenses in obtaining drilling contracts.

The profit and loss statements attached to Phillips' individual returns for these years show a profit on the rig operation of $4,867.61 for 1951, $4,362.07 for 1952, and $4,671.12 for 1953, but the corporation never received any part of those profits. Actually, the corporate minutes reflect that Phillips' financial statements to the corporation showed no profit was earned during each of these years. His return for 1954 shows a loss on the rig operation of $35,280.88, and this too was not shared with the corporation.

Except for the leases mentioned above, the rig and its accessories were the only corporate assets, and apparently the corporation had no business activity apart from Phillips' drilling operations with the rig. Although Phillips stated that the corporation had had a set of corporate books, he was unable to produce them, and it appeared doubtful that the corporation had at any time filed any federal corporate income tax returns.

At the close of plaintiff's evidence, defendants moved to dismiss the complaint on the question of damages claimed by plaintiff; that motion was granted by the Court.

The major premise upon which defendants relied at the trial was that plaintiff was merely the alter ego of R. H. Phillips; and in view of the conclusion reached by the Court on this defense, no decision is necessary on the other affirmative defenses set out in the answer.

It is aptly stated by the Court in Carlesimo v. Schwebel, 87 Cal.App.2d 482, 197 P.2d 167, 172:

"The laws as to when the courts will pierce the corporate veil are easy to state, but hard to apply."

■ Although a corporation is ordinarily regarded as a legal entity separate and distinct from its members, there is today no doubt that this fiction of a separate existence may be disregarded and the acts of the members treated as acts of the corporation where circumstances warrant it. As a general statement of this principle, it is said in 18 C.J.S. Corporations § 6, P. 376 that,

"It is clear that a corporation is in fact a collection of individuals, and that the idea of the corporation as a legal entity or person apart from its members is a mere fiction of the law introduced for convenience in conducting the business in this privileged way. It is now well settled, as a general doctrine, that, when this fiction is urged to an intent not within its reason and purpose, it should be disregarded and the corporation considered as an aggregation of persons, both in equity and at law.

"As is shown in § 7b infra, fraud is a common ground on which the courts will ignore the corporate structure, but actual fraud is not necessary. In addition to actual fraud, the courts will discard the corporate fiction whenever its retention would produce injustices and inequitable consequences."

and § 7, at page 380,

"Not only in such cases does the law recognize that a corporation is in reality a collection of individuals and that the corporate entity is a mere fiction, but the fiction also may be and often is disregarded even for the purpose of giving effect to the acts of the stockholders or members individually as the acts of the corporation. As already stated in § 6 supra, the fiction is to be disregarded whenever it is urged to an intent and purpose not within its reason and policy.

"The abstraction of the corporate entity should never be allowed to bar out and pervert the real and obvious truth."

■ This doctrine is particularly applicable when the facts demonstrate that the corporation is merely the alter ego or business conduit of its governing or dominating personality. In such cases, the courts in many jurisdictions have not been hesitant to pierce the corporate veil and look to the ultimate person in

order to regard them as one for the purpose of preventing an injustice. However, the facts on which it will be determined that the corporation is the alter ego of a person, and the reasons that will justify a decision that an injustice has been committed, are too varied to enumerate; each case presents its own peculiar problems. See 1 Fletcher, Cyc. Corp. (Perm.Ed.) Sec. 41 and cases collected at notes 68 and 97. As general statements, it has been said that before the corporate entity can be disregarded and,

> "* * * the acts and obligations of a corporation can be legally recognized as those of a particular person, and vice versa, the following combination of circumstances must be made to appear: First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased: Second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." Minifie v. Rowley, 1921, 187 Cal. 481, 202 P. 673, 676.

and that,

> "The theory of the alter ego has been adopted by the courts to prevent injustice, in those cases where the fiction of a corporate entity has been used as a subterfuge to defeat public convenience or to perpetuate a wrong." Pickwick Corp. v. Welch, D.C.1937, 21 F.Supp. 664, 669.

◼ In order to disregard the corporate entity it is not necessary that the plaintiff prove actual fraud, but it is enough if the recognition of the two entities as separate would result in an injustice. See Thornburgh Construction Co. v. College Heights Development, 1952, 111 Cal.App.2d 295, 244 P.2d 735.

◼ The fiction that corporate existence and corporate functions are distinct from that of stockholders is introduced for convenience and to subserve ends of justice; but, when invoked in support of an end subversive of its policy, it should be and is, disregarded by courts. Paul v. University Motor Sales Co., 1938, 283 Mich. 587, 278 N.W. 714.

The Courts in Nebraska, Wyoming and Colorado have applied the alter ego doctrine in several cases. See State ex rel. Sorensen v. Weston Bank, 1933, 125 Neb. 612, 251 N.W. 164; Bordy v. Goodman-Buckley Trust Co., 1936, 131 Neb. 342, 268 N.W. 286; Ehlers v. Bankers' Fire Ins. Co., 1922, 108 Neb. 756, 189 N.W. 159; Caldwell v. Roach, 1932, 44 Wyo. 319, 12 P.2d 376; State ex rel. Christensen v. Nugget Coal Co., 60 Wyo. 51, 144 P.2d 944; Gutheil v. Polichio, 1939, 103 Colo. 426, 86 P.2d 972.

◼ The effect of applying the alter ego doctrine, of course, is that the corporation and the person who dominates it are treated as one person, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound. It should be noted, however, that this is done only for the purpose of adjudging the rights and liabilities of the parties in the case. See 1 Fletcher, Cyc. Corp. (Perm.Ed.) 136–137.

◼ Turning then to the instant case, it is clear from the facts above stated that (a) the corporation had few of the usual incidents of a going concern prior to this suit, (b) it had no business apart from Phillips and his drilling operations with the rig, and (c) that Phillips regarded the rig and its accessories as his own at all times, although they were for all practical purposes the sole corporate assets. Certainly, it cannot be doubted that he completely controlled and dominated the corporation from its inception, and that he was in effect the sole owner. It is apparent that the sole function of the corporation was to hold naked legal title to the rig, while Phillips used it in his drilling operations. On these facts, there is ample justification for finding that the Shamrock Oil and Gas Co. was

698

a mere dummy corporation and the alter ego of R. H. Phillips. Indeed, it would be difficult to imagine a situation more clearly calling for the application of the alter ego doctrine.

It is also apparent that an injustice would result in this case if the doctrine were not applied, since defendants would then be deprived of the fruits of their judgment against Phillips. When, as here, the corporation is a mere dummy and the alter ego of a judgment debtor with no real existence apart from him, the fiction of the corporation as a separate legal entity will not be used to defeat the rights of the judgment creditor. Consequently, it is held that the Shamrock Oil and Gas Co. was merely the alter ego of R. H. Phillips and, as such, is fully bound by the sheriff's sale in satisfaction of the judgment against Phillips as if it had also been a defendant in that action and had participated fully therein.

Therefore, the Court finds that the defendants are the owners of and are entitled to the immediate possession of the property involved herein. The evidence is not clear as to the exact property involved; in the pleadings and in the evidence it has been variously referred to as (1) "the rig" (2) "portions of the rig" (3) specific items, e. g.; "draw-works and complete", "rotary table and substructure", etc. Because of this variance in the description of the property, the Court finds that the property as described on the Marshal's return is determinative, to wit:

One–Draw Works and One Cummings Diesel Engine
One–Derrick, jack-knife type
One–Rotary Table and Substructure
Two–Dog Houses
One–Float single axel
One–Pipe rack
One–Skid for Mud Pump & Motor, D 13000 Caterpillar.

Having determined that the defendants are the owners and entitled to the possession of the personal property above described—and inasmuch as the plaintiff has been in possession of the property since the delivery thereof to it by the Marshal under the writ of replevin—the Court must now determine (1) the value of that property (in case a return to defendants cannot be had) and (2) the damages, if any, due defendant from plaintiff for taking and withholding the property.

*Value of Property*—The record is devoid of any conclusive testimony as to the fair market value of the property, either at the time of the taking or at the time of the trial. The valuations as set by the parties, both from the pleadings and from the testimony vary from $10,000 to $35,000. Upon this conflicting evidence the Court finds the fair market value of the said property as of this date to be $15,350.

■ *Damages for Taking and Withholding the Property*—The measure of damages for the detention of usable trade equipment such as the property involved here has been expressed as "the usable value of the property for the period of wrongful detention, estimated generally in accordance with the ordinary market price, or the reasonable value of the use of the property * * * ." 77 C.J.S. Replevin § 277, p. 202. In other words, the amount of defendant's damages is the fair rental value he could have received had the items not been replevied.

■ The only evidence of damage offered by defendants was defendant Ethridge's testimony of the specific opportunities he had to rent portions of the rig during the period it has been in plaintiff's possession, and the deposition of a man who rents similar equipment in the Sterling area as to the amounts he received and his estimates of the amounts he believed defendants could have received. Whether defendants would have received this latter amount had they had the property available to rent is speculative, and for this reason the Court feels that the evidence of specific requests received by the defendants is the only sub-

:stantial evidence of the amounts they would have received as rentals.

Based on the evidence of damage submitted, the Court finds that the defendants have been damaged in the amount of $1,713.75 as a result of plaintiff's wrongful taking and withholding of the property. The costs are to be taxed to plaintiff.

The foregoing shall constitute my Findings of Fact and Conclusions of Law in conformance with Rule 52 of Federal Rules of Civil Procedure, 28 U.S.C.A.

Counsel for defendants will prepare a judgment and decree in accordance with this Opinion.