J. E. CANDAL & COMPANY, Plaintiff and Appellee, *v.* LUCAS R. RIVERA ET AL., and ALFREDO CANINO and EDUCATIONAL ENTERPRISES, INC., Defendants and Appellants the last two.

No. 301. Decided November 15, 1962.

*Angel Díaz García* for appellants. *Luis Blanco Lugo* and *Jorge Souss* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

In the year 1956 and at the beginning of 1957, Lucas R. Rivera and Rafael González Morales conducted a school by the name of "Modern Tabulating and Technology School", located in Hato Rey in a building leased by Alfredo E. Canino.

On November 5, 1956 Rivera and González signed several notes in favor of Joaquín E. Candal to guarantee a loan made

to them by the latter, and which amount was used to settle some payments for an X-Ray machine used for teaching in the school, and also to acquire school equipment and supplies. The total sum of these notes was $5,600. In February 1957 Candal sold to Rivera and González some equipment and supplies for the Modern Tabulating and Technology School on a conditional sale contract. The amount owed was represented by twelve notes of $67.25 each, the first one of which expired on March 7, 1957, and the others on the same day of the following consecutive months.

In May 1957, Alfredo E. Canino took steps to acquire the Modern Tabulating and Technology School which operated in a building belonging to him in Hato Rey. The owners of the school owed Canino $2,100 by way of rentals, plus $2,000 by way of a personal loan, that is, a total sum of $4,100. On June 26, 1957, the transaction transferring the school, with its equipment and furniture, to the corporation "Educational Enterprise, Inc." was finally concluded. Canino owned 5/6 parts of the shares of this corporation and the other two shareholders were his daughter, Lourdes M. Canino and his *compadre*, Lic. Angel Díaz García. In order to conclude the sale transaction of the school, Canino transferred his debt claim of $4,100 to the corporation and this sum was made to appear as a consideration in the sale contract of the Modern Tabulating and Technology School.

In August of the same year, the Educational Enterprise, Inc. corporation, sold the aforesaid school to L. Martiniano García for the sum of $15,000. It does not appear from the record that the aforesaid corporation carried out other transactions except the purchase of the school for $4,100 which were owed to Canino, and its sale two months later to Martiniano García for $15,000.

In 1958, J. E. Candal filed an action of debt against Lucas R. Rivera and Rafael González Morales, doing business under the name of Modern Tabulating and Technology School

and against Alfredo E. Canino and Educational Enterprise, Inc. In the first cause of action he claimed the payment of four promissory notes which amounted to $1,400, plus the amount of ten notes of $67.25 each, plus interest at the annual rate of 9 per cent. He alleged that Canino and Educational Enterprise, Inc. had expressly assumed the payment of the aforesaid debts upon acquiring the business of defendants Rivera and González which operated under the name of Modern Tabulating and Technology School. In the second cause of action he alternatively alleged that the transfer of the aforesaid school was made with the intention of defrauding plaintiff in the collection of his debt due to the insolvency of the debtors Rivera and González and that codefendants Canino and Educational Enterprise, Inc., had knowledge of plaintiff's credit and executed the contract in question to deceive plaintiff in the collection of his aforesaid credit.

Defendants Rivera and González did not answer the complaint and their default was entered.

Canino and Educational Enterprise, Inc. jointly filed their answers. They denied almost all the facts of the complaint and they affirmatively alleged that the contract of sale of the Modern Tabulating and Technology School executed by Rivera and González in favor of Educational Enterprise, Inc. was a legitimate transaction and that it was made to pay a legitimate debt in favor of the purchaser.

After a trial on the merits the Superior Court rendered judgment ordering defendants to pay plaintiff *in solidum* the amounts claimed in the complaint. It also imposed costs and $300 for attorney's fees on Canino and Educational Enterprise, Inc.

In this appeal, Canino and Educational Enterprise, Inc. assign to the trial court the following errors:

"First: It erred in deciding that defendant Alfredo E. Canino assumed the debts of the other defendants, Lucas R. Rivera Vergelí and Rafael González Morales.

"Second: It erred in ordering the payment of debts at an usurious interest rate, which was therefore in excess of what is permitted by our laws.

"Third: The trial court erred in piercing the corporate veil of defendant, Educational Enterprise, Inc. and deciding without any basis in support thereof that the corporation and the natural person, Alfredo E. Canino, had merged.

■ The first error is directed to challenge the weighing of the evidence made by the trial court as to whether or not defendant Canino assumed the payment of the debts of the Modern Tabulating and Technology School. The evidence was contradictory in this respect, but the conflict was settled in favor of plaintiff. We have studied the evidence in the record and we are convinced that the error assigned was not committed. Canino took charge of the school before the sale contract in favor of Educational Enterprise, Inc. was concluded. As a matter of fact he collected certain amounts in favor of the school and paid some of its debts. Canino confronted the problem that if the school did not pay its debts, the Secretary of Education would withdraw his approval, forbidding the enrollment of veterans. In view of this situation he agreed to pay those debts of the school which he considered legitimate. This finding of fact is supported by the testimony of plaintiff Candal as well as those of Antonio de Jesús, Auxiliary Director of the Veteran Education Division of the Department of Education, of codefendant Rivera Vergelí, and of Canino himself. We have no doubts that the latter had knowledge of the debt in favor of plaintiff when he took charge of the school; we also have no doubts that the business was made on the condition that Canino would take care of the school's assets and liabilities. As for the rest, the evidence is conclusive to the effect that plaintiff's credit was legitimate, if by legitimate we must understand— as we infer Canino also understood—those sums taken as a loan, or under a conditional sale contract, or by installments, to be used in the maintenance and operation of the Modern

Tabulating and Technology School. The money owed to Candal was used for that purpose, namely: the payment of certain overdue installments on an X-Ray machine used for educational purposes and the purchase of school equipment and supplies. Thus Canino cannot evade his obligation to pay plaintiff's legitimate credits.

■■ The foregoing makes it unnecessary to discuss the third assignment challenging the decision to pierce the corporate veil of Educational Enterprise, Inc., and identify it with defendant Canino. However, if we consider the specific circumstances of this case,[1] especially the ties that bind its stockholders,[2] the number of shares owned by Canino, manner in which the sale transaction originated, Canino's intervention in the business, carrying on real acts of ownership of the business before the transfer of the school to the corporation, etc., they clearly show that said corporation was Canino's *alter ego*.[3] To decide the contrary in this case would be to permit the use of the corporate fiction to evade compliance with legitimate obligations. See *Heirs of Pérez* v. *Gual*, 76 P.R.R. 898; *Cruz* v. *Ramírez*, 75 P.R.R. 889. Thus, the trial court did not err in piercing the corporate veil.

■ In the second assignment, appellant maintains that the judgment orders him to pay debts at an usurious rate of interest. It appears from the evidence that Candal made a loan to Rivera and to González for the sum of $5,000, and that to secure it, the debtors issued five promissory notes on November 5, 1956 for the total sum of $5,600 payable within the term of six months. The judgment ordered Canino to pay four of those notes plus interest at the rate of 9 per cent

---

[1] The application of the doctrine of piercing the corporate veil depends on the particular circumstances of each case. *Automotriz del Golfo de California* v. *Resnick*, 306 P.2d 1.

[2] The courts are very careful in supporting a corporation in cases where all the stockholders are members of the same family. *Fortugno* v. *Hudson Manure Co.*, 144 A.2d 207.

[3] *Shamrock Oil & Gas Co.* v. *Ethridge*, 159 F. Supp. 693.

starting from their respective maturity dates.[4] The five notes included interest which amounted to $600. A single arithmetical operation shows that the interest agreed upon exceeded the legal interest, since the loan capital was only $5,000; yet the debtors bound themselves to pay $5,600 within the term of six months. It was a single transaction consisting of a $5,000 loan. The five promissory notes issued by the borrowers were not separately negotiated. Therefore, an interest in excess of 8 per cent exceeded the interest permitted by the law. 31 L.P.R.A. § 4591; *Aldrey* v. *Registrar*, 49 P.R.R. 54. This is so respecting the interest included in the notes as well as the interest which the trial court included in its judgment at the rate of 9 per cent per annum.

Appellee confronts this second assignment of error with the following arguments:

"Summarizing the facts concerning this second error, a) there is no evidence to support unequivocally that the sum of $600 was for interest; b) the defense of usury is untimely, since it was not raised in the allegations; c) even if it could be understood that the evidence amended the allegations for the purpose of considering the defense of usury as raised, it would not lie, 1) in the case of the 'corporation,' because of the express prohibition contained in the Corporation Law, and 2) in the case of defendant Canino, because it does not concern the original debtor and because his claim is not based on his personal promise to assume the debts."

 We answer by saying that (a) the evidence shows, if anything, that the principal amounted to $5,000, as

---

[4] The judgment specifies these sums in the following manner:

"$750 plus interest at the rate of 9 per cent per annum from February 22, 1957,

"$1,050 plus interest at the rate of 9 per cent per annum from March 22, 1957,

"$1,150 plus interest at the rate of 9 per cent per annum from April 22, 1957,

"$1,150 plus interest at the rate of 9 per cent per annum from May 22, 1957."

represented by five promissory notes, which amounted to $5,600 and that since it was a loan and not any other type of transaction, the $600 in excess of the $5,000 was necessarily interest. Candal himself testified that the loan was for $5,000 and that the interest was included in the promissory notes,[5] (b) that although the defense of usury is an affirmative defense which should be raised in the answer—Rule 6.3 of those of Civil Procedure—in a case such as the present, nothing prevents said defense from being considered as raised by the evidence introduced, and in that sense, the allegations as amended; especially when it concerns a right whose waiver is forbidden by the law. 31 L.P.R.A. § 4594. And we have already seen that there was evidence as to the total sum of the loan and the interest agreed upon. It appears from that evidence that the interest agreed upon exceeds the rate permitted by law, (c) the defense of usury was proper in this case even if defendant was not the original borrower. Although it is true, as appellee alleges, that on two occasions this Court had expressly left undecided the point of whether the defense of usury could be raised by someone other than the person who was originally liable—*Caraballo* v. *Registrar*, 48 P.R.R. 902 and *Rosario* v. *Ruiz*, 62 P.R.R. 310—it later decided the point in *Giráu* v. *González*, 73 P.R.R. 393, stating the following at pp. 398–9:

"In arguing the first error appellant admits that the contract executed between Regino Rivera and him on February 4, 1946 violated the provisions of the Usury Act, cited by the lower court, and that Rivera could have raised successfully the defense of usury.

---

[5] Candal testified:

"Q.—He means that they were paying 9 per cent per annum. Were you paid default interest?

"A.—No, sir.

"Q.—It appears that the interest of that loan would be paid monthly...

"A.—The interest is included in the notes.

"Q.—How much was the principal of the loan?

"A.—It was five thousand dollars ($5,000.00).

"However, he contends that appellee can not invoke the nullity of said contract since the defense of usury may only be raised by the original debtor and not by a third person such as appellee, for the manner in which she acquired the immovable was tantamount to a novation of the contract executed between appellant and Regino Rivera.

"Assuming without deciding that the contract between appellant and appellee was a novation of the original contract executed between appellant and Rivera, this fact did not prevent appellee from raising, as she did, the defense of usury, notwithstanding the provisions of § 1162 of the Civil Code, 1930 ed. And this is so because, as we stated in *Caraballo* v. *Registrar*, 48 P.R.R. 902; *cf. Rosario* v. *Ruiz*, 62 P.R.R. 310, and now we hold here, no contract which violates the Usury Act may be enforced in any court in Puerto Rico, pursuant to § 4 as amended in 1916, *supra*, § 4 also providing that the rights in it defined 'shall not be waived'. Therefore, notwithstanding the provision of § 1162 of the Civil Code, *supra*, if the ground for nullity in the contract object of novation is predicated on the fact that it violates the Usury Act, the debtor is not prevented from invoking the nullity of said contract, and if it be shown, as it was done in the instant case, that appellant stipulated and collected usurious interest in the original contract executed with

---

"Q.—How much was the principal?
"Plaintiff:
 "He has just answered that it was five thousand dollars.
"Defendant:
 "I want you to tell me what was the principal. I would like the witness to answer me...
"Witness:
 "Everything is included. The five thousand dollars were the total sum. I lent them $5,000 in order to buy equipment. Everything is included there, plus the unpaid interest.
"Q.—How much is that interest?
"A.—If we look for the documents, it will be seen...
"Q.—Then, has the interest become due?
"A.—Yes, sir.
"Q.—Before the documents matured, were the interest included in the note?
"A.—I lent them five thousand dollars and no more.
"Q.—But those five thousand dollars did they or did they not earn interest?
"A.—It appears from the documents that the five thousand dollars are shown therein.
"Q.—That is all." (Tr. Ev. 46–47.)

Rivera (and this is admitted by appellant in his brief) as well as in the one he entered into with appellee, the trial court did not err in enforcing the provisions of the Usury Act in the manner it did in its judgment."

█ Respecting the alleged estoppel of the corporation to raise the defense of usury—14 L.P.R.A. § 2206—appellee forgets that in the case at bar the corporate veil was pierced and the corporation was identified with defendant Canino, a determination which benefited plaintiff Candal.

██ Although the usurious loan is a contract having an illegal consideration, the Legislature has made special rules to regulate its effects. Thus, § 1652 of the Civil Code— 31 L.P.R.A. § 4594—provides that no contract of this nature may be made effective in any court in Puerto Rico, except for the amount of the principal due; and the court must provide, furthermore, in the judgment directing the debtor to pay the principal, that the creditor shall recover only seventy-five per cent of said principal and that the remaining twenty-five per cent shall be awarded to and recovered by the Commonwealth of Puerto Rico. Consequently, since the principal of the loan was $5,000 and the debtors paid $1,500 of that amount, the capital which it owed is $3,500. Of this amount plaintiff-appellee shall recover 75 per cent, that is, $2,625 and the other 25 per cent, amounting to $875, shall be awarded to the Commonwealth of Puerto Rico.

The judgment appealed from will be modified, and as modified it will be affirmed.