HENRY D. JAYNE, APPELLANT, V. WILLIAM E. HYMER, IMPLEADED WITH MARY E. HYMER, APPELLEE.

FILED DECEMBER 17, 1902.   No. 12,379.

Commissioner's opinion, Department No. 2.

1. Creditor's Suit: CONVEYANCE TO WIFE BY THIRD PERSON: ALLEGATION AND PROOF. In order to maintain a creditors' suit against a wife to set aside a conveyance of real property made to her by a third person, plaintiff must allege and prove that the relation of creditor and debtor existed between himself and the husband at the time such conveyance was executed, or that it was executed fraudulently with the expectation on the part of the husband that he would become indebted to the plaintiff, and to prevent, hinder and delay him in the collection of such debt when contracted.

2. Finding Sustained by Evidence: WIFE BONA-FIDE OWNER. Held, That the finding that the wife was the bona-fide owner of the property in question, that it was conveyed to her in pay-

56

ment for money advanced by her to her husband, the proceeds of which had been used in the purchase of the property which was the consideration for the conveyance, was sustained by the evidence.

3. **Creditors' Bill.** An action in the nature of a creditors' bill can not be maintained to set aside the conveyance of property which is exempt to the defendant as a homestead.

APPEAL from the district court for Phelps county. Proceeding in the nature of a creditors' bill to set aside a deed of real estate. Heard below before ADAMS, J. Decree for defendants. Plaintiff appeals. *Affirmed.*

*W. P. Hall* and *Hector M. Sinclair,* for appellant.

*James E. Kelby, Addison S. Tibbets, George W. Tibbets, Charles F. Morey* and *Anderson, contra.*

BARNES, C.

Henry D. Jayne filed his amended petition in the nature of a creditors' bill in the district court for Phelps county on the 21st day of June, 1900, against the defendants, William E. Hymer, Mary Hymer, his wife, and others, to set aside a deed made by the Holdrege National Bank, by which it conveyed the west half of lots 7, 8 and 9, in block 12, of the Second addition to the city of Holdrege, to Mary E. Hymer, and subject the property to the payment of a judgment which he had obtained against her husband, on the ground that the property belonged to Hymer, and had been conveyed by the bank to his wife fraudulently, and for the purpose of cheating and defrauding his creditors. All of the defendants, except Mary E. Hymer, defaulted. She filed her answer, in which she set forth that she was the bona-fide owner of the property in question; that she paid the consideration therefor; that her husband had no interest therein; that she claimed the property, which consisted of the half lots above described, together with a small dwelling-house thereon, as her homestead, and a home for herself, her husband

and her children. A reply was filed to her answer, and upon these issues the cause was tried. The court found in favor of the defendant Mary E. Hymer. A judgment was rendered dismissing the plaintiff's action, and thereupon he appealed to this court.

An examination of the record and the bill of exceptions discloses the following facts: In the year 1879 William E. Hymer and his wife, the appellees herein, came to Phelps county from their former home in the state of Illinois. Hymer had no property at that time except his horses and wagon, and a small amount of household furniture. Mrs. Hymer had in her possession $210 in money, which came to her from the estate of her deceased father. They found a person from whom they purchased the improvements that he had placed upon a piece of government land which he held as a homestead, took an assignment of his rights, had his entry canceled, and Hymer filed upon it as a homestead. Mrs. Hymer, out of the money she then had, paid $115 to the former claimant; paid the filing fees, and the balance of her money was used to improve the land. They lived on this homestead until Hymer proved up, and procured his patent therefor. Meanwhile he had engaged in the hardware and implement business at a little town near his farm, and when the village of Holdrege was started they sold their homestead and Hymer moved his hardware and implement business to that place. The understanding between Hymer and his wife had always been that the homestead should be deeded to her, to be kept as their home, and for the purpose of reimbursing her for the money which she had put into it. This was never done, but when they moved to Holdrege the homestead was sold, three lots were purchased in the village, and a good house was built thereon, which was occupied by them as their homestead up to the fall of 1894. After removing to Holdrege, Hymer had engaged in the banking business, and on October 11, 1894, he was the president and a director of the Holdrege National Bank. He had become largely indebted to that institution, and

in order to pay his said indebtedness he and his wife con-
veyed the house and lots above mentioned to the said
bank, and received a credit therefor of something like
$4,500, and as a part of that transaction and in order to
repay Mrs. Hymer for the interest that she rightfully had
therein, the bank conveyed the premises in question, con-
sisting of the three half lots and a small house situated
thereon, to her. The testimony disclosed that at the time
of such conveyance the property was not worth more than
$600 or $700; no one puts the value greater than $800.
From that time to the present Mrs. Hymer has always
claimed and held said premises as her own, and as a home-
stead for herself and family. Soon after the property was
conveyed to her she, together with her husband, moved to
University Place, near Lincoln, where they are living in
a rented house and where they are temporarily located
for the purpose of educating their children in the Wes-
leyan University, there situated. It further appears that
neither of them is the owner of any other real estate what-
ever. The evidence is undisputed that it is Mrs. Hymer's
intention, and the intention of her husband, as soon as
their children are educated, to return to Holdrege and
occupy the premises in question as their homestead. It
further appears that the judgment which is the basis of
the creditors' bill herein, was not obtained against William
E. Hymer until November, 1897, or more than three years
after the conveyance was made to Mrs. Hymer by the bank.
It further appears that the judgment was rendered in an
action for tort against William Hymer, and that at the
time of the conveyance the plaintiff did not know or claim
that he had a right of action, even for tort, against him.
The evidence further discloses that the whole transaction,
including Hymer's settlement with the bank, and the con-
veyance of the premises in question by the bank to Mrs.
Hymer, was carried on with the utmost good faith. It
is not shown in the evidence that Hymer was indebted to
the appellant at the time of the conveyance, or that he
owed anyone else, except one debt to a person whose testi-

mony appears in the record, and which it appears he still owes. As before stated, upon these facts the decree of the court was rendered in favor of the appellee.

This judgment should be sustained : First—Because neither the petition nor the evidence discloses that at the time the conveyance complained of was made the appellant was a creditor of William E. Hymer in any amount or to any extent whatever. Neither does it appear that the conveyance was procured by Hymer to be made to his wife in anticipation of the fact that he would become indebted to the appellant. In order to maintain a creditors' suit against a wife to set aside a conveyance of property made by a third person to her, the relation of debtor and creditor must have existed between the plaintiff and her husband at the time such conveyance was executed; or it must have been executed fraudulently, with the expectation on the part of the husband that he would become indebted to the plaintiff at a future time, and for the purpose of preventing, hindering and delaying the collection of the debt when it should finally be contracted. *Lavigne v. Tobin,* 52 Nebr., 686; *Callahan v. Powers,* 24 Nebr., 731; *Jansen v. Lewis,* 52 Nebr., 556. Second—It appears from the evidence that the court was justified in finding that the property in question belonged to the wife; that it was purchased with the product of her money, and was conveyed to her in payment for money of her own that she had advanced to the husband, which had been used by him in procuring other property, and which was, among other things, the consideration for the conveyance in question. The evidence was amply sufficient to sustain this finding, and it should not be set aside because we are unable to say that it was clearly wrong. This finding alone is sufficient to sustain the judgment dismissing the bill. Third—It appears from the evidence that the property, even were it owned by the husband, would be exempt as a homestead, and could not be subjected to the payment of the appellant's judgment. An action in the nature of a creditors' bill can not be predicated upon the conveyance of exempt

property; such property is not susceptible of a fraudulent alienation, and creditors have no legal right to complain that property purchased with exempt funds is transferred, even without consideration. *Derby v. Weyrich,** 8 Nebr., 174; *Frazier v. Syas,* 10 Nebr., 115, 117, 35 Am. Rep., 467, 4 N. W. Rep., 934; *Gillespie v. Brown,* 16 Nebr., 457, 460; *Bloedorn v. Jewell,* 34 Nebr., 649, 651; *Furman v. Tenny,* 28 Minn., 77; *Carhart v. Harshaw,* 45 Wis., 340; *Delashmut v. Trau,* 44 Ia., 613; *Smith v. Rumsey,* 33 Mich., 183; *Washburn v. Goodheart,* 88 Ill., 229; *Hixon v. George,* 18 Kan., 253. A debtor may acquire a homestead and hold it exempt as against debts not reduced to judgment when it was obtained, even if he exchange for it property which was not exempt by law. *Paxton v. Sutton,†* 53 Nebr., 81.

It is apparent, therefore, that the judgment and decree of the district court was right, and we recommend that it be affirmed.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.

* 30 Am. Rep., 827.
† 68 Am. St. Rep., 589.