CHARLOTTE MARTIN ET AL., ADMINISTRATORS, APPELLEES, V. MABEL E. SHEARS ET AL., APPELLEES; HOWARD ABEL, APPELLANT.

FILED FEBRUARY 21, 1907. No. 14,632.

1. **Fraudulent Conveyances: PRESUMPTIONS.** Although a relationship between a grantor in fraud of creditors and his grantee may be so distant as not of itself to raise a presumption of participation by the latter in the fraudulent intent, within the rule established

by this court, yet such relationship, together with facts and circumstances of knowledge and intimacy, may suffice to that end.

2. Evidence found sufficient to establish the fraudulent character of the instrument in suit.

3. Fraudulent Conveyances: VALIDITY BETWEEN PARTIES. A contract or conveyance fraudulent as to creditors is not, for that reason only, void as between the parties to it.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed with directions.*

*Fawcett & Abbott*, for appellant.

*Byron G. Burbank, H. W. Pennock* and *F. A. Shotwell*, contra.

AMES, C.

On January 25, 1900, Charles J. Barber was the owner of a house and lot in Omaha and in occupancy of it, together with his family, consisting of his wife and daughter and the husband of the latter, as a homestead, and on that date conveyed it, his wife joining, to their daughter, Mabel Shears, who immediately reconveyed it to her mother. February 24 following Mrs. Barber and her husband executed a mortgage on the premises to secure the payment of a negotiable promissory note for $3,500. On September 24, 1900, the note and mortgage were transferred to Howard Abel, who was the husband of a niece of Mrs. Barber. In February of the following year Mrs. Barber and her husband conveyed the property to their daughter, subject to the mortgage. At the time when these transactions occurred the value of the unincumbered title to the homestead was $5,500. In March and April, 1900, suits were brought in Douglas county against Charles J. Barber, which afterwards ripened into three several judgments in favor, respectively, of Charles Martin, Edward Krug and the administrators of the estate of Alvin Saunders, deceased. Meantime the mortgage was assigned of record to one Amzi W. Strong, who, however, never had or claimed any real ownership or interest in it. In

August, 1903, this action was brought by Mrs. Martin against Mrs. Shears and her husband and Strong, by a petition alleging the deeds and mortgage to have been executed without consideration and for the purpose of defrauding the creditors of Charles J. Barber, especially the plaintiff, and praying to have them set aside and the property subjected to the payment of her judgment. Krug and the administrators of Saunders intervened with cross-petitions of like purport, and Abel intervened with a cross-petition pleading the mortgage and praying a foreclosure of it. Issues having been made upon these pleadings, a trial of the cause resulted in a decree adjudging the mortgage and conveyances to have been executed in fraud of creditors and to be void as against the latter, and directing the premises to be sold and the proceeds to be appropriated: First, to the payment of the costs of the action; second to the payment to Mrs. Shears of $2,000, the amount of the homestead exemption, which was held not to be the subject of a conveyance fraudulent as against creditors; and, third, to the satisfaction of claims of the intervening judgment creditors. Abel, the assignee of the mortgagee, appealed.

It is shown, without much dispute, that Charles J. Barber, who had previously been accounted wealthy, had become insolvent, or at least much embarrassed and broken in health, and had converted large values of property into money at or about the time of the execution of the deeds and mortgage; and, although Mrs. Shears testified that she paid her parents, or to one of them, as a consideration for the mortgage, $3,500 in cash, the full value of the premises in excess of the homestead exemption, she does not show whence or how she obtained the money, except that she says, generally, that it was given to her during the years 1898 and 1899 by her father and husband, but she does not say in what sums or proportions, and she had no other property or source of income, but she says that she was ignorant of her father's financial affairs. We think the circumstances already recited are sufficient

to raise a presumption of an intent on his part to place the property beyond the reach of his creditors, from which intent she has not exculpated herself to the extent which, considering her relationship, is required of her by a familiar rule of this court.

Consistently with the foregoing views, the mortgage must be regarded as having been at its inception void as against creditors. Appellant's connection therewith, so far as the same is disclosed by competent evidence, is as follows: He was a resident of the city of Chicago, and desirous of loaning money upon real estate mortgages. Relying upon his acquaintance and confidence in Barber, he applied to the latter to secure for him investments of that description. Barber does not appear to have complied with the request further than to call the attention of the appellant to the fact that his daughter, Mrs. Shears, was the owner of a note secured by a mortgage for $3,500 upon the Barber homestead, which she was desirous of selling. The mortgage had been placed for sale in the hands of an Omaha firm of brokers, who had forwarded it to a law firm in Chicago, in whose possession it then was. Appellant had visited the Barber home, and was familiar with the property, which he regarded as sufficient in value to be adequate security for the indebtedness, and by some arrangement with the lawyers procured the note and mortgage to be transferred to himself. At the time of obtaining the transfer he knew of the pendency of the suits against Barber, which resulted in judgments as above recited. He testified that he did not remember how or in what manner he paid for the transfer to himself, whether "with a certificate of deposit, with cash, or with a check drawn on his banker, or with a check which might have been drawn upon his broker." In corroboration of this somewhat vague statement there is no evidence, nor any testimony, either by the Chicago law firm or by the Omaha brokers or by Mrs. Shears, except that she testified that she received $3,500 for the note and mortgage, but she does not tell in what manner or from whom. To the

foregoing effect there is no conflict in the evidence, and we think it may fairly be inferred that appellant was acquainted with all the facts above quoted, and so far familiar with the circumstances as that he may fairly be presumed to have had sufficient notice of Barber's embarrassment, and of his intent, in the execution of the deed and mortgage, to put him upon his inquiry. So distant a relationship as that which existed between the parties may not of itself raise a •presumption of fraud against the appellant, or impose upon him the burden of establishing freedom from participation in or knowledge of the fraudulent inception of the mortgage, but we think that such relationship, coupled with such knowledge as has been shown, is sufficient to raise such a presumption, which the circumstances tend rather to strengthen than to remove. The evidence does not disclose that appellant became the purchaser of any other mortgage than that in suit, and it is doubtful if the transaction can, without further explanation, be regarded as one occurring in the usual course of business. It is possible that the purchase was made in good faith, but we think there are circumstances of so suspicious a character as to call for a more satisfactory explanation than appears from the record. It seems to us that there ought, at least, to be a requirement that appellant show by something more than his own unsupported and extremely vague testimony that he paid a valuable consideration for the assignment which the record leaves us considerably to doubt. But even such payment with knowledge or notice of the fraudulent character of the instrument would not suffice to protect his title, and his actual intimacy with Barber puts him, we think, in the same category as a nearer relative, and subjects his conduct to the rule laid down by this court in numerous instances. *Smith v. Jansen,* 12 Neb. 125; *Dorrington v. Minnick,* 15 Neb. 397; *Armagost v. Rising,* 54 Neb. 763; *Marcus v. Leake,* 4 Neb. (Unof.) 354; *Fisher v. Herron,* 22 Neb. 183; *Bank v. Chapman,* 50 Neb. 484.

The conclusion thus arrived at disposes of the contro-

versy between the appellant and the intervening judgment creditors, but leaves the rights and obligations of the former and Mrs. Shears undetermined.  The situation is peculiar, and, so far as counsel have informed us, is without precedent or authority.  It seems to us, however, that Mrs. Shears, having at all times considered and treated the mortgage as valid and received its full face value on the occasion of its transfer to the appellant, has no ground upon which she can stand to dispute its validity as against him, although, on account of the intervention of the creditors, it is thus made to operate, contrary to her intent, upon the amount of the homestead exemption.

We therefore recommend that the judgment be reversed and the cause remanded to the district court, with instructions to enter a new decree directing the premises in dispute to be sold and the proceeds of the sale distributed: First, to the payment of the costs of the action; second, to the payment of $2,000, the amount of the homestead exemption, to the intervener Abel; third, to the proportional payment of the intervening judgment creditors; fourth, to the payment of the residue of the amount due the appellant; and, fifth, if there shall be any surplus after the payment of all such claims, to the defendant Mabel Shears.

OLDHAM and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion. it is ordered that the judgment be reversed and the cause remanded to the district court, with instructions to enter a new decree directing the premises in dispute to be sold and the proceeds of the sale distributed: First, to the payment of the costs of the action; second, to the payment of $2,000, the amount of the homestead exemption, to the intervener Abel; third, to the proportional payment of the intervening judgment creditors; fourth, to the payment of the residue of the amount due appellant;

and, fifth, if there shall be any surplus left after the payment of all such claims, to the defendant Mabel Shears.

REVERSED.