STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. WESTON BANK, E. H. LUIKART, RECEIVER, APPELLANT: E. C. HUNT, INTERVENER, APPELLEE.

FILED NOVEMBER 29, 1933. No. 28729.

F. C. Radke, Barlow Nye, L. T. Fleetwood and Joe F. Berggren, for appellant.

Schiefelbein & Donato, contra.

Heard before GOSS, C. J., ROSE and PAINE, JJ., and CARTER and REDICK, District Judges.

REDICK, District Judge.

The Weston Bank was closed and taken over by the state banking department and is now in the hands of a receiver for liquidation. At the time the bank was closed there was due the Citizens Telephone Corporation on a checking account the sum of $1,549.92. Among the assets of the bank was found a note for $1,500, signed by intervener, E. C. Hunt. Hunt filed with the receiver a claim as owner for the deposit standing in the name of the telephone company, together with a request that an offset be allowed on said note against the deposit. The receiver allowed the claim for the deposit to Citizens Telephone Corporation, but refused the request for offset.

Hunt took the cause to the district court for Saunders county by petition in intervention, joining with him the telephone corporation, and after trial duly had the court entered a decree allowing the set-off which the receiver had refused, and receiver brings the cause to this court on appeal.

The question for determination is whether or not a deposit in the name of the telephone company can be set off against the note of Hunt. The right of set-off is claimed by intervener (1) under the statute governing set-offs, and (2) on the ground that the facts entitle him to an equitable set-off.

The claim for a statutory set-off may be disposed of

very briefly. Such a set-off must be one on which the claimant could, at the commencement of the suit, have maintained an action against the plaintiff; and the respective demands must be between the same persons and in the same capacity. It seems clear that these conditions are not fulfilled because Hunt at no time could have maintained an action against the bank or the receiver for the recovery of the deposit in question; and, furthermore, the deposit is in the name of the telephone company while the note is the individual note of Hunt. This leaves for consideration the single question whether or not the facts in the record present a case for the application of the doctrine of equitable set-off.

The record, practically without dispute, establishes the following facts: The Citizens Telephone Corporation was organized under the laws of Delaware, and prior to 1928 E. C. Hunt and one Cheney were the owners of all the capital stock. In 1928 Hunt bought out Cheney and thereafter was the sole owner of the capital stock of the corporation. In 1915 Cheney loaned the corporation on its note the sum of $8,000, of which Cheney spent $1,600 in repairing the Malmo Exchange in Saunders county, belonging to the corporation. November 11, 1928, about the time Hunt purchased Cheney's interest, he borrowed of the Weston Bank the sum of $5,000, the unpaid balance of which is represented by the $1,500 note now in the hands of the receiver, dated May 15, 1931. The proceeds of the $5,000 loan made to E. C. Hunt were withdrawn from the Weston Bank and deposited in Omaha banks, to the personal credit of Hunt. On November 1, 1928, Hunt paid Cheney $1,335.35 and on December 6, 1928, $329.15, a total of $1,664.50, to reimburse Cheney for the amount expended by him in 1915 for repairs on the Malmo Exchange, and these payments are the amount sought to be offset against the deposit in the Weston Bank.

Accounts were kept in the Malmo and Weston banks and a number of banks in other towns where the telephone company operated exchanges, in the name of the

Citizens Telephone Corporation; deposits were also kept in said banks in the individual name of E. C. Hunt. Inasmuch as Hunt was the sole owner of the corporation, there seems to have been little care taken to distinguish, when making deposits, between the funds of the corporation, and the individual funds of Hunt, although the deposits of the different exchanges were kept separately under the name, e. g., "Citizens Telephone Corporation, Malmo."

Upon this state of facts intervener Hunt claims the right to an equitable offset of the deposit against his note, basing his claim upon the proposition that, being the sole owner of the corporation, he and the corporation are one person, and that, having paid a debt or obligation of the corporation in the sum of $1,600, he is the owner of the deposit and entitled in equity to have the same set off against his note. The allowance of the offset would enable the telephone company to recover the full amount of its deposit in the Weston Bank and withdraw from the assets thereof the note of E. C. Hunt, the amount of which would otherwise be distributed among the depositors of the bank. We think this result cannot be accomplished under any rules governing equitable set-offs as applied to the facts of this case.

It is conceded that Hunt and the corporation are separate legal entities. Except in fraudulent transactions or those involving the doctrine of estoppel, the corporation would not be liable for the individual debts of Hunt nor Hunt for the debts of the corporation. The fact that Hunt was the owner of all the corporate stock does not operate to merge his identity with that of the corporation any more than the identity of a group of stockholders would be so merged. That one person becomes the owner of all the stock of a corporation does not necessarily destroy its identity, and property conveyed to the corporation does not become the property of such person. *Harrington v. Connor*, 51 Neb. 214.

Intervener urges that the insolvency of the bank changes

the relations of the parties and raises an equity in his favor entitling him to the offset. However, this is not a case where the claim of offset is made against an insolvent debtor of the claimant, but one where the claim is made against a third party seeking to offset the deposit of a perfectly solvent debtor of the claimant, to wit, the telephone company. E. C. Hunt as an individual has no claim against the insolvent bank which in equity should be set off against his indebtedness to that bank. While his claim of offset is in form against the bank, in reality and substance it is against the telephone company; and if the contest were between Hunt and the company over the amount of the deposit, equity would disregard the separate entities of the parties and adjust the matter between them. In the present case the depositors of the bank are equitably entitled to a distribution of its assets and this right would be destroyed to the extent of Hunt's note if the offset were allowed. If an offset were permissible in this case it would not be difficult for a corporation to insure itself against loss of deposits by the failure of a bank by the simple maneuver of having its directors and stockholders give their individual notes to the bank for loans made for the benefit of the corporation. By this means it would be possible to perpetrate a fraud on persons dealing with the corporation by concealing the amount of its debts, and upon the creditors of the bank by apparently increasing the amount of its assets.

To the proposition that "The insolvency of a party against whom the set-off is claimed is a sufficient ground for a court of chancery to allow it in cases not provided for by statute," intervener cites four cases from this state: *Clark Implement Co. v. Wallace*, 102 Neb. 26; *Richardson v. Doty*, 44 Neb. 73; *Wilbur v. Jeep*, 37 Neb. 604; *Thrall v. Omaha Hotel Co.*, 5 Neb. 295. But in all those cases the party against whom the offset was sought was indebted to the claimant, and unless the offset was allowed claimant stood to lose his debt. If the telephone corporation were insolvent instead of the bank, claimant

might have some equities which could be protected by the application of the deposit, or some part of it, upon his note; but the insolvency of the bank raises no equity in his behalf. In the present case the bank is not indebted to Hunt, but the telephone company which is so indebted is perfectly solvent; therefore, if Hunt is required to pay his debt to the bank, he is amply secured from loss. The cases cited, therefore, are not applicable.

Intervener also cites the case of *State v. Farmers & Merchants Bank*, 114 Neb. 378, but in that case there was only one entity, John R. Dewitt, doing business under the trade-name of Morrill Motor Co. That equity will disregard the separate entity of a corporation and an individual owning all its stock for the purpose of preventing injustice may be conceded; but, as we have attempted to show, there is no equity in Hunt which the court is called upon to protect. The equity of the receiver as representative of the creditors of the bank is superior to any equity of Hunt against the telephone company, by which neither the bank nor its creditors are affected. Equity will not do injustice to the creditors, in order that Hunt may be relieved from a situation of his own making.

The precise question involved in this case has never been passed upon by this court. A number of cases are cited to the effect that "in the absence of equitable considerations" a set-off may not be allowed unless the claim be one upon which the claimant might have maintained an independent suit against the plaintiff at the time of the action, but those cases furnish no comfort to the intervener. As we have shown, there are no equitable considerations as between Hunt and the bank.

It would seem, considering the multitude of cases contained in the various reports of the courts of this country, some precedent for the claim of the intervener in this case exists and could be found, but the industry of counsel and research of the writer have discovered but one, which is cited in the brief of the receiver, to wit, *Gal-*

*lagher v. Germania Brewing Co.*, 53 Minn. 214, holding: "The demands of stockholders individually cannot be interposed as equitable set-offs to a demand against the corporation, even though the plaintiff is insolvent." In that action the plaintiff, as assignee of one Westphal, under a general assignment for the benefit of creditors, brought suit to recover for goods sold and delivered by his assignor to the defendant corporation. Barge and Vander Horck intervened and set up in their complaint that they owned (each one-half) all the capital stock of the defendant, and that each of them had a valid and unsatisfied judgment against Westphal on a cause of action which accrued before the assignment to plaintiff; that Westphal was and had been for over two years utterly insolvent and that his estate was so hopelessly insolvent that it was insufficient to pay even the expenses of administering the assignment. The relief sought was that their claims against Westphal might be allowed, in equal amounts, as equitable set-offs to the claim of the plaintiff against the defendant corporation. In reversing an order overruling a demurrer to the complaint, the court said: "The case is certainly a novel one, for we doubt whether an instance can be found in the books where stockholders ever attempted to set up their several equities by way of set-off to claims against the corporation. * * * The facts of the present case appeal to a natural sense of justice, for while, by fiction of law, a corporation is a distinct entity, yet in reality it is an association of persons who are in fact the beneficial owners of all the corporate property. Hence, if interveners cannot set off their claims, the practical result is that Westphal's estate will collect its entire claim out of what is really their property, while the estate is at the same time indebted to them on claims of greater amount, which they will wholly lose because of Westphal's insolvency; but, as has been often said, hard cases are liable to make bad law." The court, in a well-considered opinion, then discusses the effect of the allowance of offset in that class

of cases and the confusion which would result if the shareholders could set up their several equities against persons having claims against the corporation, or, conversely, if claims in favor of the corporation could be set off against claims against individual stockholders; and, while conceding that owing to the fact that there were but two stockholders in that case, the application of the rule would be comparatively free from embarrassment, the court continues: "But, suppose there were fifty other stockholders (which would not alter the principle) what would be the result? Could interveners then interpose their claims as set-offs, and, if so, could they do so to the full amount of their claims, or only in the proportion which their shares bore to the whole capital stock? And, if the former, would they have a claim for the excess against the corporation, or a right to call on the other stockholders for contribution?" Without quoting further from that case, we recommend its perusal to the student; its reasoning appeals to us and we adopt it as a precedent to be followed in the present case.

We are convinced that the district court erred in allowing the set-off, and the judgment is reversed and cause remanded to the district court, with instructions to enter judgment disallowing set-off and dismissing the petition of intervention.

REVERSED.