MAYME FOWLER, APPELLEE, v. ELM CREEK STATE BANK, A CORPORATION, ET AL., APPELLEES, IMPLEADED WITH RONALD E. BYCROFT ET AL, APPELLANTS.
CLYDE SMYTH, APPELLEE, v. ELM CREEK STATE BANK, A CORPORATION, ET AL., APPELLEES, IMPLEADED WITH RONALD E. BYCROFT ET AL., APPELLANTS.
DUANE FRAZIER, APPELLEE, v. ELM CREEK STATE BANK, A CORPORATION, ET AL., APPELLEES, IMPLEADED WITH RONALD E. BYCROFT ET AL., APPELLANTS.
ADOLPH JAHN, APPELLEE, v. ELM CREEK STATE BANK, A CORPORATION, ET AL., APPELLEES, IMPLEADED WITH RONALD E. BYCROFT ET AL., APPELLANTS.
WILLIAM RILEY, BY DONALD ZWINK AS NEXT FRIEND, APPELLEE, v. ELM CREEK STATE BANK, A CORPORATION, ET AL., APPELLEES, IMPLEADED WITH RONALD E. BYCROFT ET AL., APPELLANTS.

254 N. W. 2d 415

Filed June 8, 1977. Nos. 41044, 41045, 41046, 41047, 41048.

Nye, Hervert & Jorgensen, Ross, Schroeder & Fritzler, and Richard J. Hove, for appellants.

Donald Loftus of Parker & Grossart, for appellees Fowler et al.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

McCOWN, J.

Each of the five plaintiffs in these cases was a purchaser of debentures issued by Midstate Insurance Agency and Management, Inc. In October 1974, each of the five plaintiffs commenced a separate action in the District Court for Buffalo County against Midstate, the Elm Creek State Bank, and the five individual defendants, who had been stockholders and directors of Midstate and Elm Creek State Bank, to recover for the losses sustained on the debentures, which had become worthless. The five cases were consolidated for the purposes of trial and appeal to this court.

Plaintiffs originally alleged three causes of action, one sounding in fraud, and the other two based on violation of the Nebraska Blue Sky Law. The two causes of action based on the Nebraska Blue Sky

Law were dismissed because the statute of limitations had run. Plaintiffs were permitted to amend their petitions by adding an additional cause of action alleging negligence on the part of the individual defendants in fulfilling their corporate duties, which resulted in the dissipation of assets which constituted a trust fund for the payment of plaintiffs as creditors of Midstate.

The Elm Creek State Bank was dismissed on motion of the Federal Deposit Insurance Corporation because the bank was in receivership and time for filing claims against it had passed.

Default judgment was entered against Midstate Insurance Agency and Management, Inc., for each plaintiff on the cause of action for fraud. Levies of execution on the default judgments were returned unsatisfied.

The case was tried to the court without a jury on the two causes of action, one for fraud, and the other for negligent mismanagement and dissipation of corporate assets. The District Court found in favor of each plaintiff and against all individual defendants on both causes of action and entered judgment for each plaintiff for the amount paid for the debentures, plus interest. The individual defendants have appealed.

In 1967, Midstate Insurance Agency and Management, Inc., was organized by Ronald E. Bycroft and Henry G. Bycroft, two of the five individual defendants, as a holding company to purchase the Elm Creek State Bank. The bank was purchased in 1967. The principal asset of Midstate at all times relevent here was the Elm Creek State Bank. The bank stock represented approximately 80 percent of the assets of Midstate, and Midstate owned approximately 80 percent of all issued shares of stock of Elm Creek State Bank. Midstate's main revenue was from management fees paid to it by the Elm Creek State Bank, from which funds Midstate paid

the bank officers and directors their salaries. Other revenue was earned from insurance and real estate commissions. Midstate had an income of $5,891 in 1969, slightly less in 1970, and thereafter had losses of $8,449 in 1971, and $406 in 1972. The Midstate records show no dividend income ever received by Midstate from the Elm Creek State Bank stock.

In 1970 and thereafter the five individual defendants were the shareholders and directors, or acting directors, of both the Elm Creek State Bank and Midstate. There are no records in evidence of any directors' meetings of Midstate. The limited records and the testimony show that all business of Midstate was conducted by the shareholders, acting as a board of directors. Shareholders' meetings of Midstate and shareholders' and directors' meetings of the Elm Creek State Bank were, on occasions, held on the same day in the same place. The District Court found that there was no evidence of a board of directors of Midstate, but that the five individual defendants "held themselves forth as stockholders of a corporation and in addition assumed the responsibilities of a board of directors." The trial court also found that as early as 1968 the Elm Creek State Bank and Midstate were treated as one organization.

The Elm Creek State Bank had not been subject to criticism by the Department of Banking before its stock was acquired by Midstate in 1967. From that time on the bank was criticized on each report of examination by the department until the bank was closed by the department and F.D.I.C. in April 1973. The report of examination of the bank's condition as of April 14, 1969, showed the adjusted ratio of capital to assets substantially below average and a very limited amount of earnings. By 1970 the state examination showed that the capital account had declined to a ratio of 5.7 percent as against a minimum 9 percent guideline figure set by the department.

The Department of Banking reported to the directors of the bank that the adjusted capital account, as compared to adjusted gross assets, was substantially less than the generally accepted standard for that size bank. The 1970 report also showed that loans subject to adverse comment comprised 6.2 percent of the loan volume. Delinquent loans represented 7.9 percent of total loans, while delinquent loans in other banks of that size averaged approximately 2 percent.

In the spring of 1970 the bank had been deficient in its legal reserve requirements on five business days in violation of law. At the conclusion of the bank examination, the bank directors were made aware of the results of the examination by the examiner, and the directors assured him that they would put an additional $50,000 of new money into the capital account of the bank. On June 9, 1970, the board voted to inject $50,000 of new capital before December 31, 1970.

On July 14, 1970, approximately a month later, the same five individual defendants, acting as the shareholders of Midstate, voted to issue up to $200,000 in 5-year debentures maturing July 15, 1975, and bearing 8 percent interest payable January 15 and July 15 of each year. Although the written record of the meeting contains no additional details, the testimony was that each of the five defendant shareholders of Midstate was empowered to sell the debentures for Midstate. In 1970, $25,000 in debentures were sold to William Riley, $5,000 to Mayme Fowler, and $10,000 to Adolph Jahn. In 1971, Adolph Jahn purchased an additional $20,000, Clyde Smyth purchased $20,000, and Duane Frazier purchased $15,000. The final $5,000 in debentures involved here was purchased by Adolph Jahn in November of 1972.

Meanwhile the financial condition of the Elm Creek State Bank continued to be criticized by the banking department for inadequacies of capitaliza-

tion, loan policies, and statutory violations. The 1971 examination showed loans subject to criticism constituted 14.7 percent of total loans, more than double the 1970 percentage, and delinquent loans had increased to 9.2 percent of total loans. The Department of Banking held a meeting with the board of directors following the examination and discussed the conditions existing and the need for corrective action. By the time of the 1972 examination the situation was still worse. Statutory violations included credit extensions to the defendant Ronald E. Bycroft above maximum allowable limits. Loans subject to adverse comment had increased to 15.5 percent of total loans, and in spite of a substantial capital infusion in December 1970, the capital to assets ratio had dropped to 7 percent.

During the same time frame, funds obtained from the sale of the Midstate debentures to plaintiffs and others were being used to alter the apparent financial condition of the bank. In December 1970, Midstate bought 395 shares of the bank stock for $39,500. In February 1971, Midstate bought two notes from the bank which had been severely criticized by the Department of Banking and adversely classified in the examination reports. The two notes, which had a face value of $50,000, were bought for $35,000, and Midstate then wrote the notes off as losses. Debenture funds were also used to pay a note to U. S. National Bank of Omaha for funds initially used to purchase the Elm Creek State Bank. Funds were also used to make a direct deposit to the bank reserve for losses, to purchase other notes from the bank, and to pay the salaries of bank officers.

On April 5, 1973, the Elm Creek State Bank was closed by the Department of Banking and the Federal Deposit Insurance Corporation. Plaintiffs had received interest on their debentures through January 15, 1973, but after the bank closing they received no further payments of interest or prin-

cipal, and these actions were begun in October 1974.

The sales of debentures to the plaintiffs were made by defendants Ronald E. Bycroft or Thomas H. Neill. In the sales to all but one of the plaintiffs the defendants Bycroft and Neill represented, among other things, that the debentures were a sound investment; that both the Elm Creek State Bank and Midstate were behind the debentures; and that the bank was a good sound bank, or was making money, or was a good solid bank. In at least one sale plaintiff's check to pay for the debentures was made payable to the Elm Creek State Bank. In the case of the plaintiff William Riley, the testimony was that Riley was not competent to manage his own affairs, and that the defendant Ronald E. Bycroft was aware of that fact. There was no testimony as to the specific representations made to Riley, who appears as plaintiff in this case by his next friend.

At the conclusion of the trial the District Court found in favor of each plaintiff and against all individual defendants on both causes of action and entered judgment accordingly.

The five appealing individual defendants contend that the evidence was insufficient to sustain the judgments against them. The basic arguments are that there was insufficient evidence that fraudulent or knowing misrepresentations were made, and that representations made by defendants Ronald E. Bycroft and Thomas H. Neill were not authorized by the remaining three defendants, who did not actively participate in the sale of the debentures. The defendants also assert that the evidence was insufficient to authorize the piercing of the corporate veil and the imposition of liability on the individual defendants for actions taken by the corporation.

The evidence establishes without any serious question that all the individual defendants were, or

should have been, fully aware of the deteriorating financial condition of the Elm Creek State Bank. They knew, or should have known, that the issuance of the debentures by Midstate was for the purpose of attempting to bolster the deficient financial condition of the bank and to satisfy the direct criticisms of the Department of Banking. Each of them knew, or should have known, that facts would have to be concealed or misrepresented in order to sell the debentures. The record reflects that the five individual defendants either officially held or actively assumed the responsibilities of the board of directors of both Midstate and the bank, and that at the Midstate meeting at which the debentures were authorized each of the five individual defendants was empowered and authorized to sell the debentures. If the directors chose to delegate their responsibilities to each other as individuals they are no more excused from liability than if they committed their duties to an executive committee. The fact that only two of the individual defendants made the misrepresentations of fact and sold the debentures to the plaintiffs does not excuse the other defendants here.

We believe this case is controlled by the case of Ashby v. Peters, 128 Neb. 338, 258 N. W. 639. In that case we held that directors may not delegate their responsibility and are not excused from liability because they committed some of their duties to an executive committee or to the directors of a wholly owned subsidiary of the corporation. An individual director cannot escape liability for fraudulent corporate action taken under authorization affirmatively approved by him merely by asserting his ignorance of facts he had a duty to know and should have known. Where the duty of knowing facts exists, ignorance due to neglect of duty on the part of a director creates the same liability as actual knowledge and a failure to act thereon.

We specifically held in Ashby that where fraud is committed by a corporation it is time to disregard the corporate fiction and hold the persons responsible therefor in their individual capacities. See, also, Davis v. Walker, 170 Neb. 891, 104 N. W. 2d 479.

In the case now before us the District Court specifically found that the individual defendants held themselves forth to be stockholders of Midstate and assumed the responsibilities of a board of directors, and that the activities of the individual defendants as "stockholders" was so flagrantly fraudulent that any corporate structure must be disregarded and the defendants held responsible in their individual capacities. Those findings are supported by evidence in the record.

The defendant Calkins contends that there is insufficient evidence that he was a director of Midstate and that he cannot be held responsible for the fraud of the corporation. The record shows, however, that Calkins was named a director on the 1974 occupational tax return for Midstate. It also shows that he wrote checks on Midstate's account, and that he was in charge of preparing the shareholder minutes of Midstate. The District Court was correct in finding that Calkins, as well as the other defendants, actively participated in the sale of debentures and the management of Midstate.

Defendants finally contend that the measure of damages was not proper. They argue that the measure of damages should be the difference between the value of the debentures if they had been as represented and their actual value at the time they were purchased. Cases relied upon by the defendants involve stocks rather than debentures. Stocks represent an equity or ownership interest in a corporation while debentures are evidences of debt, such as notes or bonds which are not equity nor ownership interests. United States v. Evans, 375 F. 2d 730. Defendants' assertion is without merit.

The trial court found for the plaintiffs and against the defendants on both the first cause of action for fraud and the fourth cause of action for negligent mismanagement and dissipation of corporate assets. The defendants have not challenged the judgments on the fourth cause of action except on the ground that the trial court erred in determining that Midstate had no corporate entity. In view of the preceding discussion and the posture of this case it is unnecessary to discuss the issues arising under the fourth cause of action.

The judgment of the District Court in each of the five cases was correct and is affirmed.

AFFIRMED.