UNITED STATES NATIONAL BANK OF OMAHA V.
MAX E. RUPE ET AL., APPELLANTS.
BOB & BOOTS, INC., A NEBRASKA CORPORATION,
INTERVENOR-APPELLEE.

296 N.W.2d 474

Filed September 5, 1980. No. 42481.

Robert M. Zuber of Zuber & Ginsburg for appellants.

Kutak Rock & Huie for intervenor-appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

PER CURIAM.

This is a creditor's action by the plaintiff bank to set aside an allegedly fraudulent conveyance made on May 21, 1976, by the defendant Max E. Rupe to the defendant Shirley A. Rupe, his wife, of an undivided one-half interest in a parcel of real estate, the Rupe residence. The bank, among other things, asked that a lien be impressed upon the interest which it claimed had been fraudulently conveyed. Bob & Boots, Inc., another creditor of Max E. Rupe, was permitted to intervene and it asked for similar relief. The bank and the intervenor each received the relief prayed for and the Rupes have appealed. While this appeal was pending, Shirley A. Rupe paid the bank's claim and took an assignment of its lien. Upon motion, the bank was dismissed as a party to the appeal. At this time, the

remaining parties in interest are the intervenor and the defendants Rupe.

The Rupes make the following assignments of error: (1) The District Court erred in declaring the deed of conveyance a nullity rather than merely voidable to the extent of the prejudice to the creditors; (2) The evidence is insufficient to support the findings of the trial court; (3) The petition in intervention did not state a cause of action and the evidence did not support the judgment because the intervenor was not a creditor at the time of the conveyance and it neither pleaded nor proved an intent to defraud subsequent creditors; and (4) The trial court erred in determining that the Updike Oil Company, a corporation, was the alter ego of the defendant Max E. Rupe and that Max was liable for the debts of the corporation to the intervenor. We modify and affirm as modified.

In order to understand the assigned errors and the contentions of the parties with reference to these assignments, it is necessary to outline some of the basic facts.

Max was the sole stockholder of the Updike Oil Company, which he acquired in 1972. Between the dates of March 19, 1974, and April 16, 1976, the intervenor sold Updike merchandise on open account. On April 16, 1976, $4,114.35 was unpaid and delinquent on that account. On May 21, 1976, Max, by quitclaim deed, conveyed to Shirley the one-half interest in the real estate involved. On April 29, 1977, the intervenor obtained judgment against Updike in an action brought against both Updike and Max. By stipulation, that action was, as to Max, dismissed with prejudice. On May 13, 1977, in consideration of a promise to withhold execution against Updike, Max made a personal guarantee of payment of the Updike debt. Thereafter, the intervenor brought action against Max on the guarantee and on September 2, 1977, obtained judgment against him for $3,600. The intervenor asks to have a lien for the present unpaid balance of that sum impressed upon the one-half interest in the property con-

veyed by quitclaim deed on May 21, 1976. Such further recitals of the evidence will be made as are necessary as we make our determinations in connection with each of the errors assigned.

Neb. Rev. Stat. § 36-401 (Reissue 1978) provides: "Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods or things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, made with the intent to hinder, delay or defraud creditors or persons, of their lawful rights, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, or decree or judgment suffered, with the like intent as against the persons so hindered, delayed or defrauded, shall be void."

This court has held that a voluntary conveyance is good as between the parties to the instrument and void only as to the creditor or creditors who attack it. *Filley v. Mancuso,* 142 Neb. 106, 5 N.W.2d 91 (1942); *Martin v. Shears,* 78 Neb. 404, 110 N.W. 1010 (1907). The court erred, therefore, in annulling the deed rather than merely making the property subject to a lien of the defrauded creditors. That part of the decree which sets aside and annuls the deed which appears in deed record book 1544 at pages 605-06 in the office of the Register of Deeds of Douglas County, Nebraska, is therefore reversed.

The second, third, and fourth assignments of error are necessarily interwoven and will be discussed together. It will be useful to first state some of the governing principles of law. A conveyance without or for inadequate consideration, made with the intent to delay or defraud creditors, is fraudulent. *Smith v. Ely,* 164 Neb. 636, 83 N.W.2d 55 (1957). A conveyance of the interest of one spouse to the other is presumptively fraudulent as to existing creditors unless the good faith of the transaction is established by a preponderance of the evidence. *First Nat. Bank in Kearney v.*

*Bunn,* 195 Neb. 829, 241 N.W.2d 127 (1976). A creditor whose debt did not exist at the date of the voluntary conveyance by the debtor cannot have the conveyance declared fraudulent unless he pleads and proves that the conveyance was made to defraud subsequent creditors whose debts were in contemplation at the time. *First Nat. Bank in Kearney v. Bunn, supra; Ayers v. Wolcott,* 66 Neb. 712, 92 N.W. 1036 (1902).

A corporation is a legal entity complete and separate from its shareholders and officers. *Solheim v. Hastings Housing Co.,* 151 Neb. 264, 37 N.W.2d 212 (1949). Generally, the shareholders of a corporation are not liable for its debts or other obligations. *Globe Publishing Co. v. State Bank of Nebraska,* 41 Neb. 175, 59 N.W. 683 (1894). In equity, the corporate entity may be disregarded and held to be the mere alter ego of a shareholder or shareholders in various circumstances where necessary to prevent fraud or other injustice. *State ex rel. Sorensen v. Weston Bank,* 125 Neb. 612, 251 N.W. 164 (1933); *Massachusetts Bonding & Ins. Co. v. Master Laboratories,* 143 Neb. 617, 10 N.W.2d 501 (1943); *Delchamps, Inc. v. Borkin,* 429 F.2d 417 (5th Cir. 1970); *Briggs Transp. Co. v. Starr Sales Co.,* 262 N.W.2d 805 (Iowa 1978); *Mobridge Community Industries v. Toure,* 273 N.W.2d 128 (S.D. 1978); *Fowler v. Elm Creek State Bank,* 198 Neb. 631, 254 N.W.2d 415 (1977).

Some of the factors which are relevant in determining to disregard the corporate entity are: (1) Grossly inadequate capitalization; (2) Insolvency of the debtor corporation at the time the debt is incurred; (3) Diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses; and (4) The fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity.

We will not, for the most part, discuss specific details of the evidence, but rather set forth the inferences which the court was entitled to make from that evidence.

The Rupes contend that the conveyance was for a valuable consideration: cancellation of promissory notes owed by Max to Shirley. Max testified that, beginning in 1960 or 1961, he and his wife were making joint investments and that Shirley never received any of the profits in cash but, instead, annually received from him promissory notes for her share, and that Shirley permitted Max to reinvest all the profits. No records of any kind supported the alleged transactions, other than the promissory notes themselves. The court could conclude, and apparently did, either that the transactions alleged to underlie the notes did not take place, or that the notes themselves were fictitious. Shirley did not testify. Evidence was introduced to show that she avoided service of a subpoena which would have required her to appear. The court could conclude from the evidence that no consideration supported the notes.

The evidence, therefore, supports a finding that the conveyance by Max to Shirley was without consideration and, therefore, presumptively fraudulent if, at the time the conveyance was made, the intervenor was an existing creditor of Max. The Rupes contend the intervenor was not a creditor of Max at the time the deed was executed and delivered on May 21, 1976, because Max's obligation to the intervenor rose out of the guarantee of May 13, 1977, and the intervenor was, therefore, a subsequent creditor and the presumption of fraud does not apply. It is at this point that the alter ego contention operates. Intervenor argues that the evidence establishes that when it extended credit on the open accounts to Updike, the facts then existing showed that, at that time, Updike was Max's alter ego and that he was liable for its debts.

The evidence does support the conclusion that, during the period the debt was incurred, Updike was Max's alter ego. We briefly discuss that evidence.

When Max acquired Updike it was grossly undercapitalized. Thereafter, the corporation operated

almost wholly upon money which Max loaned to it from money he had borrowed. A balance sheet furnished to the bank as of September 30, 1973, listed stockholder's equity of $56,238 of which only $100 consisted of capital stock. These loans from Max to the corporation were omitted from its financial statements; thus, the statements showed an inflated net worth. Other evidence indicated that Max had ownership of or interests in other corporations and that he either diverted assets from Updike to these other corporations or permitted Updike to extend credit in the amount of $100,000 to these entities in his own personal interest. In October 1975, the bank discovered Rupe had taken the capital stock of Overland Armored Express as security for an account receivable due Updike in the amount of $125,000. He permitted obligations incurred by one corporation to be paid by another. In short, he operated without regard to the fact of the separate corporate entities. Other evidence indicated that Updike was in financial difficulty and unable to meet its financial obligations. Evidence also showed that Max himself was in great financial distress and that he was no longer in a position to obtain the financing he needed to continue to operate Updike. The foregoing evidence is sufficient to support a finding that Updike was the alter ego of Max. The disregard of the corporate entity is justified.

If, when the Updike debt was incurred, Updike was merely Max's alter ego, it is immaterial that Max, at a later date after the fraudulent conveyance, executed a guarantee of an indebtedness which, in legal contemplation, was already his. We so hold. The Rupes, however, say that the alter ego issue was finally determined against the intervenor in the action by the intervenor against Updike which resulted in Max being dismissed from that suit with prejudice. We need not, however, consider the merits of that contention in this creditor's action. In its petition in this case, the intervenor pleaded and relied upon the alter ego premise.

The Rupes' answer was a general denial. Res judicata is an affirmative defense which must ordinarily be pleaded to be available. *Tedco Development Corp. v. Overland Hills, Inc.*, 205 Neb. 194, 287 N.W.2d 49 (1980).

AFFIRMED AS MODIFIED.

BRODKEY, J., concurs in result.

KRIVOSHA, C.J., dissenting.

I must respectfully dissent from the majority in this case. While the result which the majority seeks to attain may be appropriate, the legal basis upon which it is obtained is, in my view, not sound and will only cause us to have to make a host of distinctions in future cases. In my view, the majority opinion has established a rule that a subsequent creditor may have a conveyance made by a guarantor set aside as a fraudulent conveyance even though the conveyance was made prior to the execution of the guarantee. I do not believe that even the majority intends for that to be the rule of law; yet, I believe that is, in essence, what does result from the majority opinion.

As the majority opinion notes, suit against Max Rupe (Max) individually was dismissed *with prejudice* in *Bob & Boots, Inc. v. Overland Armored Express et al.*, Doc. 247, No. 315 (Omaha Mun. Ct., May 16, 1977). At that point in time, Max was no longer personally indebted to Bob and Boots (B & B), if ever he was personally liable.

It was not until May 13, 1977, in consideration of B & B's promise to withhold execution of its judgment against the corporation, that Max personally signed the guarantee involved in this case. The suit in the instant case is not on the judgment obtained against the corporation but, rather, upon the judgment obtained on the guarantee signed by Max on May 13, 1977, almost a full year after the conveyance by Max to his wife on May 21, 1976.

The majority holds that the corporation was indebted to B & B on May 21, 1976, and that the corporation was,

in fact, Max's alter ego and that, therefore, there was the requisite relationship of debtor and creditor existing between Max and B & B on May 21, 1976, when the conveyance was made. This permits the court to set the conveyance aside as a fraudulent conveyance. The difficulty with that reasoning is that the execution which brings about this action was not on the judgment obtained against the corporation or the debt existing between the corporation and B & B on May 21, 1976. The execution is upon a judgment arising out of a guarantee which did not exist before May 13, 1977. Piercing the corporate veil produces no legal basis for setting aside the conveyance when the judgment involved in this action is not the judgment against the corporation but rather the judgment against Max personally by reason of the guarantee. Attempting to simply mix them all together does not serve any benefit except to add confusion to the state of the law.

The relationship of debtor-creditor upon which B & B bases its attempt to have the conveyance set aside did not come into existence until the guarantee was executed. That was long after the conveyance. The majority simply disregards the dismissal with prejudice as though it never existed.

In *First National Bank in Kearney v. Bunn*, 195 Neb. 829, 832, 241 N.W.2d 127, 129 (1976), we said, "A different standard is applied to creditors whose debts are in existence at the time of conveyance, as opposed to subsequent creditors. A creditor whose debts did not exist at the date of a voluntary conveyance by the debtor cannot attack such conveyance for fraud unless he pleads and proves that the same was made to defraud subsequent creditors whose debts were in contemplation at the time." Likewise, in *Tanner v. Frink*, 103 Neb. 817, 174 N.W. 417 (1919), we said, "The question of fraudulent intent is to be considered as of the time when the conveyance is made and with reference to the particular conveyance alleged to have been fraudulent as against creditors." (Syllabus of the court.) Finally,

in *DeForge v. Patrick,* 162 Neb. 568, 575, 76 N.W.2d 733, 738 (1956), we said, "The rule seems to be well settled that, to set aside a conveyance on the ground that it is fraudulent as to subsequent creditors, such creditors must allege and prove that such conveyance was made with intent to defraud subsequent creditors and in contemplation of such future indebtedness." Likewise, see, *Jayne v. Hymer,* 66 Neb. 785, 92 N.W. 1019 (1902). The record in this case conclusively establishes that B & B neither pleaded nor proved that the conveyance made on May 21, 1976, was made for the purpose of defrauding B & B in connection with a guarantee obtained on May 13, 1977.

To be sure, B & B may have been entitled to collect on its judgment against the corporation and, in so doing, raise the issue of alter ego. The dismissal with prejudice against Max personally undoubtedly would have presented some problems in that regard. But B & B elected not to pursue its judgment against the corporation, just as it elected to dismiss with prejudice its earlier action against Max personally. The net effect of this case is to say that a guarantor who has made a conveyance prior to the execution of the guarantee may have that conveyance set aside if judgment is subsequently obtained on the guarantee even though there is no pleading and no proof that such conveyance was fraudulent as to the guarantee. I do not believe that is the law nor do I believe that the majority wishes it to be the law.

The majority further disregards the dismissal with prejudice by maintaining that res judicata is an affirmative defense which must ordinarily be pleaded to be available. While that is, indeed, a correct rule of law generally, in this case it has no application. The evidence of that dismissal was before the court. It is in the record without objection as to its admission. Evidence which is part of the record, though not pleaded, may be considered by an appellate court. See 5 C.J.S. *Appeal and Error* § 1480(b) (1958). For these reasons, I must respectfully dissent from the majority.