Lothrop v. Chirob, Inc., No. S1051-03 CnC (Norton, J., Mar. 4, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                  SUPERIOR COURT
Chittenden County, ss.:                       Docket No. S1051-03 CnC

LOTHROP

v.

CHIROB, INC.


ENTRY

This is a motion for summary judgment that raises the question of how liability attaches to a corporate officer.

Defendants David Roby and Darren Chiott formed Bullet Boy, Inc., a message and delivery service in northern Vermont. The two incorporated their business as a Vermont corporation and became the company's sole shareholders, directors, and officers. Ten years later, they decided to sell

their business and listed it with the Vermont Business Brokers.  The Brokers generated a packet of information about Bullet Boy.  This included an overview of the operations, owner's information, number of employees, list of equipment, purchase price, and financial statements of operating income for the past two years.  It is unclear who from Bullet Boy helped the Vermont Business Brokers prepared this list.  It may have been Chiott; it may have been Roby; or it may have been both.

At this point, plaintiff Gregory Lothrop entered the picture.  He received the packet of information on Bullet Boy and began making inquires.  He dealt exclusively with Chiott who talked with him on the phone and met with him at two meetings in August 2001.  At those meetings, Lothrop, Chiott, and an agent of the Vermont Business Brokers discussed the details of the business and negotiated the sale.  At one meeting, Chiott gave Lothrop a list of Bullet Boy's top ten customers by total annual billing amounts.  These dealings led to a letter of intent signed by Chiott and Lothrop.  The two physically inspected the business's equipment and assets and signed an asset purchase agreement.  Chiott then executed a Bill of Sale, conveying all of Bullet Boy's equipment and assets to Lothrop, including its customer lists.  Bullet Boy, Inc. then changed its name to Chirob, Inc., which freed Lothrop to create a corporation with that name, essentially taking possession of the company's goodwill asset.

Lothrop now claims that Roby and Chiott greatly overstated the value of their business.  In particular, he points to the customer lists that the parties provided at the time of the Bill of Sale.  Lothrop claims that many of the "active customers" were in fact former or dissatisfied customers.  According to Lothrop, these lists were the most important asset of the company and its inaccuracies greatly altered the value of the business.  Lothrop, however, also claims that he was misled by the information given

to him before and during the sale by Chiott and the Vermont Business Brokers, which also exaggerated the business's haleness.

In his defense, Roby does not dispute any of these facts or Lothrop's dissatisfaction. Instead, Roby points to the fact that the entire sale and several of the lists generated during negotiations were produced by Chiott. Roby argues that Chiott, and Chiott alone, bears all personal liability for them, and that he should not be held liable because he did not participate in their manufacture or distribution.

To understand the implications of Roby's defense and its relative merit, it is necessary to isolate Roby in each of his many roles at Bullet Boy, Inc. See generally C. Fain, Corporate Director and Officer Liability, 18 U. Ark. Little Rock L.J. 417 (1996) (discussing the limits of corporate duties and liabilities for individuals). As a shareholder Roby enjoys immunity for the tortious actions of officers, other shareholders, and directors. 11A V.S.A. § 6.22(b) (noting that personal actions are the sole source of liability). In this case, Roby appears to have acted as a shareholder only to extent that he voted to approve the asset sale. This decision is not at issue in the present litigation. As a director, Roby had similar immunity, so long as he relied in good faith on information and acted as an ordinary, prudent director. 11A V.S.A. § 8.30. In this case, Roby may have acted as a director when he and Chiott came up with the idea to sell the assets of the corporation, and it may have been as a director that he and Chiott agreed to have Chiott handle any prospective buyers. He may even have acted as a director in approving the sale to Lothrop. But these activities put Roby too far away from the details of the sale that Lothrop cites in his complaint. Roby as director may be authorizing the sale and empowering Chiott to provide details, but there is no evidence that Roby as director was ordering Chiott to mislead customers or generate

misleading documents and customer lists. Lothrop's basis for his claims is much smaller. He is claiming that Roby and Chiott produced misleading documents that led him to overvalue the corporation. In this respect, he is talking about Roby and Chiott in their role as officers of the corporation.

An officer of a corporation is charged with performing duties listed in the corporate bylaws and any duties prescribed or directed by the board of directors. 11A V.S.A. § 8.41. When dealing with external parties, an officer is often an agent of the corporation, but he is not an agent of other officers. It is generally held that an officer, even one acting in an official capacity, is liable only for torts that she commits. 3A W. Fletcher, Fletcher Cyclopedia of the Law of Corporations § 1135 (2002). Conversely, an officer is not personally liable for the torts of a corporation merely by virtue of her office. Id. at § 1137; see also Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc., 425 S.E.2d 144, 148–49 (W.Va. 1992) (collecting cases). Roby's argument for summary judgment focuses on his non-participation in any direct dealings with Lothrop. In respect to the general rule, this position has some merit. Since there is no evidence that Roby and Chiott conspired from the beginning to mislead any buyers, Chiott's misrepresentations made during the negotiations and through documents that he generated are not attributable to other officers, directors, or shareholders. To the extent that they are misrepresentations, they are attributable to Chiott and the corporation.

The problem with granting summary judgment in this case, however, is that despite his evidence, Roby does not discuss the manufacture of the initial information provided to the Vermont Business Brokers or the final customer list provided at the sale. More importantly, these two exceptions are indicative of the lack of evidence showing that Chiott, and not Roby, was the sole officer responsible for generating and handling all of the

material for the sale.  This is important because there is an exception the rule against officer liability.

The responsible corporate officer doctrine states that "if a corporate officer participates in the wrongful conduct, or knowingly approves the conduct, the officer, as well as the corporation is liable for the penalties." 3A Fletcher, at § 1135, at 202.  As one court phrased the duty:

> An individual director [or officer] cannot escape liability for fraudulent corporate action taken under authorization affirmatively approved by him merely by asserting his ignorance of facts he had a duty to know and should have known.  Where the duty of knowing facts exists, ignorance due to neglect of duty on the part of a director creates the same liability as actual knowledge and a failure to act thereon.

Fowler v. Elm Creek State Bank, Inc., 254 N.W.2d 415, 419 (Neb. 1977).

This exception to officer liability is not a piercing of the "corporate veil."  Cf. Agway, Inc. v. Brooks, 173 Vt. 259, 262–63 (2001).  When a court pierces the "corporate veil," the court is essentially ignoring the corporate structure with its inherent liability because the owners and officers of the corporation through underfinancing or fraudulent behavior have abused the corporate form and behaved outside the corporate structure.  In this case there is no evidence by plaintiff to suggest that Chiott or Roby abused the corporate structure itself or that there is any reason to treat them outside their roles as officers, directors, and shareholders.

Instead, what Lothrop is arguing is that it is unclear who in the corporation was responsible for generating the misrepresenting documents and who approved them before they were sent out.  While Roby disclaims

several of them, he does not disclaim them all, and he does not delineate his responsibilities in the corporation from Chiott. To the extent that Roby seeks to assert the defense of non-responsibility, the burden falls on him to make this clear and demonstrate that he was not responsible in any official capacity for generating, approving, sanctioning, or ratifying the alleged misrepresentations. There is also caselaw to support the idea that this determination is ultimately be a factual one and the province of the fact finder. Bowling, 425 S.E.2d at 149 ("In sanctioning a fraudulent act, the officer need not have actual knowledge because constructive knowledge may suffice."); 3A Fletcher, at § 1137, at 218–19. Still, it is important to note that this constructive knowledge is limited and liability will only attach where there is evidence of affirmative participation and not simply an isolated failure. See, e.g., Shay v. Flight C Helicopter Services, Inc., 822 A.2d 1, 17–19 (Pa. 2003) (noting that liability through the participation theory attaches for misfeasance but not for mere nonfeasance).

Because Roby's evidence fails to fully isolate him from the corporate process that created the alleged misrepresentations, summary judgment at this juncture would be improper. Therefore, based on the foregoing, Roby's motion for summary judgment is denied.

Dated at Burlington, Vermont_____, 2005.

_____
Judge